Jeffrey M. MASSON, Plaintiff–Appellant,

v.

The NEW YORKER MAGAZINE, INC.;
Janet Malcolm; Alfred A. Knopf,
Inc., Defendants–Appellees.

No. 94–17147.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 1996.

Decided June 5, 1996.

Charles O. Morgan, Jr., San Francisco, California, for plaintiff-appellant.

James M. Wagstaffe, Cooper, White, & Cooper, San Francisco, California, for defendant-appellee The New Yorker Magazine; Gary L. Bostwick, Santa Monica, California, and Lee Levine, Ross, Dixon & Masback, Washington, DC, for defendant-appellee Janet Malcolm.

Before ALARCON, BEEZER and RYMER, Circuit Judges.

ALARCON, Circuit Judge:

In this libel action, Jeffrey M. Masson ("Masson") appeals from the judgment in favor of The New Yorker Magazine ("The New Yorker") and Janet Malcolm ("Malcolm") following two jury trials arising from the publication of a two-part article written by Malcolm in The New Yorker on December 5, and December 12, 1983, entitled "Annals of Scholarship: Trouble in the Archives" ("the Masson article"). Masson contends that he was defamed by five quotations which were allegedly falsely attributed to him in the article.[1] Masson has conceded for the

1. The five contested quotations in the context in which they appear in the article are:

purposes of this litigation that he is a public figure. Accordingly, to establish liability he must meet the actual malice standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964).

Masson contends that the district court erred in instructing the jury both that he was required to establish that Malcolm deliberately or recklessly altered his statements to prove falsity and that Malcolm had no duty to investigate contradictory information regarding the quotations. We conclude that the district court properly instructed the jury. Masson also asserts that he was prejudiced by the district court's refusal to permit the introduction of additional excerpts from *The Journalist and the Murderer*, a book written by Malcolm after this action was filed. We disagree. We affirm the judgment in favor of The New Yorker because

(1) **"Intellectual Gigolo."** " 'Then I met a rather attractive older graduate student and I had an affair with her. One day, she took me to some art event, and she was sorry afterward. She said, "Well, it is very nice sleeping with you in your room, but you're the kind of person *who should never leave the room*— you're just a social embarrassment anywhere else, though you do fine in your own room." And, you know, in their way, if not in so many words, Eissler and Anna Freud told me the same thing. They liked me well enough "in my own room." They loved to hear from me what creeps and dolts analysts are. *I was like an intellectual gigolo*—you get your pleasure from him, but you don't take him out in public ....' " (emphasis added).

(2) **"Sex, Women, Fun."** " 'It was a beautiful house, but it was dark and sombre and dead. Nothing ever went on there. I was the only person who ever came. I would have renovated it, opened it up, brought it to life. Maresfield Gardens would have been a center of scholarship, *but it would also have been a place of sex, women, fun*. It would have been like the change *in The Wizard of Oz*, from black-and-white into color.' " (emphasis added).

(3) **"I Don't Know Why I Put It In."** "I asked him what had happened between the time of the lecture and the present to change him from a Freudian psychoanalyst with somewhat outre views into the bitter and belligerent anti-Freudian he had become."

"Masson sidestepped my question. 'You're right, there was nothing disrespectful of analysis in that paper,' he said. 'That remark about the sterility of psychoanalysis was something I tacked on at the last minute, and it was totally gratuitous. *I don't know why I put it* in.' " (emphasis added).

Masson is collaterally estopped from pursuing these claims against the magazine.

The district court had jurisdiction over this state created cause of action because the parties are diverse. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.

## I

The original complaint in this matter was filed on November 29, 1984. The fourth amended complaint was filed on October 2, 1986. On August 17, 1987, summary judgment was granted in favor of the defendants. We affirmed the judgment on August 4, 1989. *Masson v. New Yorker Magazine, Inc.*, 895 F.2d 1535, 1536 (9th Cir.1989). The Supreme Court granted certiorari and reversed the grant of summary judgment and remand-

(4) **"Greatest Analyst Who Ever Lived."** "A few days after my return to New York, Masson, in a state of elation, telephoned me to say that Farrar, Straus & Giroux has *taken The Assault on Truth* [Masson's book]. 'Wait till it reaches the best-seller list, and watch how the analysts will crawl,' he crowed. 'They move whichever way the wind blows. They will want me back, they will say that Masson is a great scholar, a major analyst—after *Freud, he's the greatest analyst who ever lived*. Suddenly they'll be calling, begging, cajoling: "Please take back what you've said about our profession; our patients are quitting." They'll try a *short smear campaign*, then they'll try to buy me, and ultimately they'll have to shut up. Judgment will be passed by history. There is no possible refutation of this book. It's going to cause a revolution in psychoanalysis. Analysis stands or falls with me now.' " (emphasis added).

(5) **"He Had The Wrong Man."** " '[Eissler] was always putting moral pressure on me. "Do you want to poison Anna Freud's last days? Have you no heart? You're going to kill the poor old woman." I said to him, "What have I done? You're doing it. You're firing me. What am I supposed to do—be grateful to you?" "You could be silent about it. You could swallow it. I know it is painful for you. But you could just live with it in silence." "Why should I do that?" "Because it is the honorable thing to do." *Well, he had the wrong man.*' " (emphasis added).

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 502–508, 111 S.Ct. 2419, 2428, 115 L.Ed.2d 447 (1991).

ed on June 20, 1991. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 525, 111 S.Ct. 2419, 2437, 115 L.Ed.2d 447 (1991). On April 6, 1992, this Court affirmed summary judgment as to Alfred A. Knopf, and remanded the case for trial as to Malcolm and The New Yorker. *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 903 (9th Cir.1992).

The first trial in this matter commenced on May 10, 1993 (*"Masson I"*). The case was submitted to the jury on a special verdict. The jury found that The New Yorker was not liable. The jury also found that Malcolm had libelled Masson, but was unable to reach a verdict regarding the damages that should be awarded.

The district court granted judgment in favor of The New Yorker on September 9, 1993. The judgment was stayed "pending final resolution of the case between Jeffrey Masson and Janet Malcolm." *Masson v. New Yorker Magazine, Inc.*, 832 F.Supp. 1350, 1378 (N.D.Cal.1993). The district court granted Malcolm's motion for a new trial "on all issues." *Id.*

The second trial commenced on October 3, 1994 (*"Masson II"*). On November 2, 1994, the jury returned a special verdict in favor of Malcolm with respect to all five quotations. The jury found that Masson had not carried his burden of persuasion that the "Intellectual Gigolo," "Greatest Analyst Who Ever Lived," and "Sex, Women, Fun" quotations were false. It found that the "I Don't Know Why I Put It In" quotation was not defamatory. Additionally, the jury found that Malcolm either did not "know that the ['He Had The Wrong Man'] quotation was false, or she [did not] act with a reckless disregard as to the truth or falsity of [the quotation]." The district court entered a final judgment in favor of Malcolm and The New Yorker on November 4, 1994.

## II

Masson challenges the court's jury instructions with respect to the "Sex, Women, Fun," "Intellectual Gigolo," and "Greatest Analyst Who Ever Lived" quotations. Masson contends that the court erred in instructing the jury that he "must prove *both* that he did not

utter the words attributed to him, *and* that the quotations represented a deliberate and reckless alteration of words actually spoken by him." Masson argues that this instruction was erroneous with respect to these three quotations because Malcolm claimed that these quotations were made "at a specific time and place, i.e., the New York breakfast meeting in May, 1983." Masson asserts that "[i]f the jury found Masson did not speak those words on that occasion, there was no ... basis for requiring the jury to also find whether the quotations represented a material alteration of words which Masson never spoke on that or any other occasion." Masson thus argues that "once the jury finds that defamatory statements were completely fabricated," the jury should not have been required to make "further inquiry on the issue of falsity."

 "We review challenges to the district court's formulation of the jury instructions for an abuse of discretion by determining whether the instructions, considered as a whole, were inadequate or misleading." *Gizoni v. Southwest Marine Inc.*, 56 F.3d 1138, 1142 n. 5 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 381, 133 L.Ed.2d 304 (1995). "We review *de novo* whether the district court misstated the elements to be proved at trial." *Id.* at 1142. "[A]n error in the jury instructions does not require reversal if it is more probable than not that the error was harmless." *Jenkins v. Union Pacific R. Co.*, 22 F.3d 206, 210 (9th Cir.1994).

The district court instructed the jury that:

Mr. Masson must prove by a preponderance of the evidence that one or more of the challenged quotations was false.

In order to prove any of the challenged quotations are false, plaintiff must prove two separate matters:

First, that he did not make the challenged statement; and second, *he must prove any words you find he did speak were deliberately or recklessly altered in a way so as to effect a material change in meaning.*

(emphasis added).

 In *Masson v. New Yorker Magazine, Inc.*, Masson argued that "excepting

correction of grammar or syntax, publication of a quotation with knowledge that it does not contain the words the public figure used demonstrates actual malice." 501 U.S. at 514, 111 S.Ct. at 2431. In declining to accept this proposition, the Court stated:

> We reject the idea that any alteration beyond correction of grammar or syntax by itself proves falsity in the sense relevant to determining actual malice under the First Amendment. An interviewer who writes from notes often will engage in the task of attempting a reconstruction of the speaker's statement. That author would, we may assume, act with knowledge that at times she has attributed to her subject words other than those actually used. Under [Masson's] proposed standard, an author in this situation would lack First Amendment protection if she reported as quotations the substance of a subject's derogatory statements about himself.

*Id.* at 514–15, 111 S.Ct. at 2432. Based on the above reasoning, the Supreme Court concluded that "a deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity for purposes of *New York Times Co. v. Sullivan*, 376 U.S. at 279–280, 84 S.Ct. at 725–26, and *Gertz v. Robert Welch, Inc., supra,* [418 U.S. 323] at 342 [94 S.Ct. 2997 at 3008, 41 L.Ed.2d 789], unless the alteration results in a material change in the meaning conveyed by the statement." *Id.* at 517, 111 S.Ct. at 2433.[2] Contrary to Masson's contention, the court's instruction did not require him to prove that words he did not speak were materially altered. The jury was admonished that *if it* found that Masson made a statement, it was required to determine whether Malcolm recklessly or deliberately altered his words so as to effect a material change in their meaning.

The district court's instruction faithfully tracks the rule announced by the Court that must be applied in cases involving an allegation that the plaintiff's words have not been quoted accurately or verbatim. The district court did not misstate the law in the challenged instruction.

### III

Masson next contends that it "was reversible error [for the district court] to instruct that [Malcolm] had no duty to investigate contradictory information." Masson asserts that as part of the constitutional malice inquiry, "under the rule of *Masson [v. New Yorker Magazine, Inc.,* 960 F.2d at 901], Malcolm was under an affirmative duty to investigate and to resolve the contradictory information before she published quotations attributed to Masson which contained one version of the contradictory facts."

During closing argument, Masson's counsel argued:

> I have got one more. It's "The Greatest Analyst." Now, on this one, in addition to all the other evidence we have been talking about, we've got tape upon tape that you've heard, and we showed it to you during the course of the trial, where he said just the opposite of this.
>
> *Now, if a writer knows that there are contradictory statements, if there were even contradictory statements, then the writer has some duty to at least find out what is the right statement.*
>
> Now, again, this is the one where [Malcolm] says it's a telephone conversation. And yet she says, "I have no record, no notes of it."
>
> But he said the same thing, the exact words in May, but I'm putting it as a telephone conversation.
>
> Again, as you can see, it just doesn't make any sense.

(emphasis added).

Outside of the presence of the jury, Malcolm's counsel objected to the reference to

---

2. The Court further stated:
 Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified." *Heuer v. Kee,* 15 Cal.App.2d 710, 714, 59 P.2d 1063, 1064 (1936); see also *Alioto v. Cowles Communications, Inc.,* 623 F.2d 616, 619 (C.A.9 1980); *Maheu v. Hughes Tool Co.,* 569 F.2d 459, 465– 466 (C.A.9 1978). Put another way, the statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." R. Sack, Libel, Slander, and Related Problems 138 (1980).
 *Id.*

"duty" as an incorrect statement of the law and requested a curative instruction. The court granted the motion and instructed the jury as follows:

> In determining reckless disregard of the truth, among the things you may consider is whether when the defendant published any of the five challenged quotations, she had information that contradicted those quotations. *However, the defendant is under no legal duty to check any contradictory information.*

(emphasis added).

■ We need not decide whether this instruction correctly reflects existing law because Masson has failed to demonstrate that the admonition was harmful. The jury found the "Greatest Analyst Who Ever Lived" quotation was not false. Accordingly, the jury did not reach the question whether Malcolm acted with malice in attributing that statement to Masson. Whether Malcolm had a duty to investigate contradictory information regarding the "Greatest Analyst Who Ever Lived" quotation became a moot issue when the jury determined that the statement was not false.

## IV

■ Masson argues that it was error in *Masson II* for the district court to prohibit the introduction of additional excerpts from Malcolm's book *The Journalist and the Murderer.* Masson maintains that he was prejudiced by the court's refusal because "Malcolm makes several sweeping statements about journalists, about her own journalistic practices and about this case itself." The proffered passages, Masson contends, are "admissions of wrongdoing by Malcolm in connection with the articles at issue, and are relevant to her state of mind and attitude towards 'quotations.'" "We review district court decisions on the admissibility of evidence only for abuse of discretion." *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.,* 875 F.2d 1369, 1378 (9th Cir.1989).

Prior to the commencement of trial in *Masson II,* Malcolm's counsel made a motion in limine to exclude excerpts from *The Journalist and the Murderer* on the ground that the proffered evidence was not relevant, or if relevant, its admission would be time consuming and confusing to the jury, and might result in unfair prejudice to Malcolm. The court granted the motion except for six excerpts which it found to be relevant.

The district court permitted Masson to introduce excerpts which either expressly referred to Masson, revealed Malcolm's state of mind at the time of the publication of the Masson article, or disclosed her theory about quoting a person she interviews.

In explaining its reasons for excluding the remainder of the excerpts, the court commented as follows:

> My clerk has read [*The Journalist and the Murderer*], too. It's very dense. It's very—it has a lot of stuff in it. And when we're talking about a philosophy of quotes, then I went along with it. When we get into more, I'm concerned it's being taken out of context.
>
> Hold on for just a second. The second concern I have is I would then have to have the jury read the whole book.
>
> And then third, one of the big problems is [Malcolm's attorney] himself is a character—or a subject in the book, I should say, one of the people discussed. And I haven't read the book. I don't know favorably or unfavorably.
>
> So if we get too far into the book, I have a problem that the jury would then have to read it to get a full understanding so that they could see that things are not taken out of context.

Rule 403 of the Federal Rules of Evidence authorizes a trial judge to exclude relevant evidence if "its probative value is substantially outweighed by the danger of ... confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

■ The district court gave careful consideration to Masson's request that the excerpts should be admitted. It ruled in his favor regarding those excerpts it found to be relevant. The court refused to admit those excerpts that might be taken out of context by the jury. It also concluded that the jury

would have to read the entire book to understand the author's message. The court determined that the excluded excerpts would be time consuming and might mislead or confuse the jury.

Masson has failed to demonstrate that the district court abused its discretion in determining that the confusion and delay that the excerpts would cause substantially outweigh the probative value of the excluded excerpts.

## V

The New Yorker contends that the verdict in the second trial in favor of Malcolm on the question of liability compels an affirmance in its favor under the doctrine of defensive collateral estoppel. We agree.

 "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Defensive collateral estoppel applies "when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane Hosiery Co.,* 439 U.S. at 326 n. 4, 99 S.Ct. at 649 n. 4. Findings made in one proceeding in which a party has had a full and fair opportunity to litigate may be used against that party in subsequent litigation. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).

 Masson received a full and fair opportunity to litigate his claims in *Masson II.* Because the jury in the second trial found that Malcolm was not liable on any claim, The New Yorker cannot be held independently or vicariously liable based on the statements in the Masson article. The preclusive effect of the findings in *Masson II* requires an affirmance of the judgment entered in favor of The New Yorker. Masson is barred from relitigating these issues against The New Yorker in a subsequent trial.

The district court's judgment is AFFIRMED.