101 F.3d 705
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
COMMONWEALTH ENTERPRISES, a California Partnership;
Panorama Enterprises, a California Partnership;
Arthur Blech,
Defendants-counter-claimants-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts
corporation, Plaintiff-cross-defendant-Appellee.
 No. 95-55719.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 6, 1996.*
Decided Nov. 13, 1996.
 
 Before: GOODWIN, WIGGINS, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 INTRODUCTION
 
 2
 Commonwealth Enterprises, Panorama Enterprises, and Arthur Blech (collectively, "Commonwealth), defendants-counter-claimants-appellants, appeal from a judgment entered after a bench trial in favor of Liberty Mutual Insurance Company ("Liberty Mutual"), plaintiff-cross-defendant-appellee. They also appeal from the dismissal of their amended cross-complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.
 
 FACTS
 
 3
 Liberty Mutual provided property and business interruption insurance on a 19-story office building owned by Commonwealth (the "Building"). On March 2, 1989, a fire started on the 15th floor of the Building. Liberty Mutual and Commonwealth settled the property damage claims. The extent of the business income coverage, however, remained in dispute. Liberty Mutual paid Commonwealth $847,229.82 under the business income portion of the insurance policy (the "Policy") and then sued for a declaratory judgment that the Policy was limited to the amounts already paid. Commonwealth counterclaimed for an additional $2 million of business interruption losses.
 
 
 4
 Liberty Mutual moved for partial summary judgment, supporting its motion with admissions made by Commonwealth. The district court granted the motion as to lost business income for all floors except 14, 15, 16, and 19. Commonwealth then moved to withdraw its admissions and for reconsideration of the grant of summary judgment. The court denied both motions.
 
 
 5
 A bench trial was held on April 11, 1995. The court made findings of fact and conclusions of law and entered judgment in favor of Liberty Mutual as to all claims on April 19, 1995.
 
 
 6
 Commonwealth appeals.
 
 ANALYSIS
 
 7
 I. THE DISTRICT COURT DID NOT ERR IN GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF LIBERTY MUTUAL.
 
 
 8
 We review a grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to Commonwealth, whether there was any genuine issue of material fact and whether the district court correctly applied the relevant law. Id.
 
 
 9
 Commonwealth argues that summary judgment was improper because a material issue of fact existed: whether airborne asbestos contamination existed as a result of the fire. The evidence before the district court showed no material issue of fact, however. The deposition of Commonwealth's representative, Arthur Blech, revealed that Blech believed that no portion of the building was contaminated with asbestos after the fire and that there was no asbestos in the air. In Liberty Mutual's requests for admissions, Commonwealth admitted, as to all floors except 14, 15, and 19, that there was no asbestos contamination caused by the fire and no asbestos fibers or materials were deposited by the fire. Neither Blech's deposition testimony nor the admissions are ambiguous. In opposition to Liberty Mutual's summary judgment motion, Commonwealth submitted letters from its tenants terminating their leases because of asbestos contamination that they believed resulted from the fire. Those letters, however, were hearsay and are not properly considered in deciding a summary judgment motion. Fed.R.Civ.P. 56. On appeal, Commonwealth argues the Blech testimony and admissions should carry little weight because the case would be a battle of the experts. Because Commonwealth submitted no expert testimony to contravene the testimony or admissions, however, the argument fails. We agree with the district court that no material issue of fact existed regarding fire damage on floors other than 14, 15, 16, and 19.
 
 
 10
 Commonwealth also argues the district court erred as a matter of law in construing the Policy. The Policy provides that Liberty Mutual will pay to Commonwealth:
 
 
 11
 the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations ... caused by or resulting from any Covered Cause of Loss.
 
 
 12
 " 'Operations' means the type of your business activities occurring at the described premises." " 'Period of Restoration' means the period of time that [b]egins with the date of direct physical loss or damage ... and [e]nds on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality." "Business activities" is not defined. Fire is a Covered Cause of Loss.
 
 
 13
 In California, the interpretation of an insurance policy is a question of law. Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 18, 900 P.2d 619, 627, 44 Cal.Rptr.2d 370, 378 (1995). The language of insurance contracts is construed "to give effect to the mutual intention of the parties." La Jolla Beach & Tennis Club, Inc. v. Industrial Indem. Co., 9 Cal.4th 27, 37, 884 P.2d 1048, 1053, 36 Cal.Rptr.2d 100, 105 (1994) (quoting Cal.Civ.Code § 1636 (West 1985)). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." Id., 884 P.2d at 1053, 36 Cal.Rptr.2d at 105 (citing Cal.Civ.Code § 1639 (West 1985)). Terms are interpreted in their ordinary and popular sense unless the parties use them in a technical sense. Waller, 11 Cal.4th at 18, 900 P.2d at 627, 44 Cal.Rptr.2d at 378 (citing Cal.Civ.Code § 1644 (West 1985)). Courts must give effect to clear and explicit policy language. La Jolla, 9 Cal.4th at 37, 884 P.2d at 1053, 36 Cal.Rptr.2d at 105 (quoting Cal.Civ.Code § 1638 (West 1985)).
 
 
 14
 Under the Policy, direct physical loss or damage to property at the insured premises is a condition precedent to coverage for lost business income. On its face, the language encompasses a requirement of some physical damage to the floor to recover lost profits for that floor. The record reveals that there was no damage caused by the fire (i.e. from smoke, water, flames, or asbestos contamination) on any floors other than 14, 15, 16, and 19. It also shows that tenants on other floors vacated because of asbestos contamination or their perception that there was asbestos contamination, not because of fire damage. Therefore, the district court did not err when it granted summary judgment in favor of Liberty Mutual with respect to lost profits on all floors other than 14, 15, 16, and 19.
 
 
 15
 II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING COMMONWEALTH'S MOTION TO WITHDRAW ITS ADMISSIONS OR FOR RECONSIDERATION OF ITS GRANT OF SUMMARY JUDGMENT.
 
 
 16
 Commonwealth's admissions may be withdrawn only if: (1) presentation of the merits is subserved, and (2) Liberty Mutual is not prejudiced by the withdrawal. Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir.1995); Fed.R.Civ.P. 36(b). Liberty Mutual bears the burden of proving lack of prejudice. Hadley, 45 F.3d at 1348; Fed.R.Civ.P. 36(b).
 
 
 17
 Presentation of the merits will be subserved by allowing Commonwealth to withdraw its admissions. The first half of the Rule 36(b) test "is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." Hadley, 45 F.3d at 1348. The admissions here eliminated from trial the issue of asbestos contamination caused by the fire on any floor other than 14, 15, or 19. Liberty Mutual argues that the admissions do not involve ultimate issues but merely simple facts. Its argument fails because the admissions, even if merely simple facts, supported the grant of summary judgment that eliminated many issues from trial.
 
 
 18
 Although it met the first prong, Commonwealth was not entitled to withdrawal because Liberty Mutual would have been prejudiced by the withdrawal. Discovery had already closed and trial might have been delayed because of the short time between withdrawal and trial. Commonwealth argues that discovery could have been re-opened and that Liberty Mutual in fact needed no discovery because it learned all that Commonwealth knew during the course of the arbitration proceedings. Re-opening discovery does not mitigate prejudice from trial delays or hastened discovery, however, particularly in light of Commonwealth's delay in bringing its motion to withdraw. Therefore, the district court did not abuse its discretion in denying Commonwealth's motion to withdraw its admissions.
 
 
 19
 The district court also did not abuse its discretion in denying Commonwealth's motion for reconsideration because Commonwealth meets none of the three factors for granting reconsideration. See School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir.1993). Commonwealth based its motion on its requested withdrawal of admissions, a declaration by its expert to the effect that "asbestos contamination" is vague and indefinite and that some of the floors were possibly contaminated by the fire, and a declaration by Commonwealth's attorney that Liberty Mutual's own expert distinguished between airborne and physical asbestos contamination. The admissions were not withdrawn, however, and neither declaration contained new evidence because both gave information Commonwealth had available at the time of the motion for summary judgment. The court's initial grant did not result from clear error and was not manifestly unjust, because, as we held above, the admissions were not ambiguous. Finally, Commonwealth showed no intervening change in controlling law. Therefore, the district court did not abuse its discretion in denying Commonwealth's motion to reconsider the grant of summary judgment.
 
 
 20
 III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING EVIDENCE AT TRIAL OF AIRBORNE ASBESTOS CONTAMINATION ON THE 16TH FLOOR.
 
 
 21
 At trial, Commonwealth asked the Liberty Mutual claims adjuster assigned to handle the Commonwealth claim, Richard Thompson, two questions about asbestos contamination on the 16th floor. Liberty Mutual objected to both questions in light of Commonwealth's admission that there was no asbestos contamination on the 16th floor as a result of the fire. The district court sustained the objections and excluded the testimony. We review for abuse of discretion. Masson v. New Yorker Magazine, Inc., 85 F.3d 1394, 1399 (9th Cir.1996).
 
 
 22
 A matter admitted under Rule 36 is conclusively established unless withdrawn. Fed.R.Civ.P. 36(b). "In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party." Fed.R.Civ.P. 36(b) notes of advisory committee, 1970 amendment. "Evidence inconsistent with a Rule 36 admission is properly excluded." 999 v. C.I.T. Corp., 776 F.2d 866, 869-70 (9th Cir.1985). The district court did not err in excluding the proffered testimony.
 
 
 23
 Commonwealth argues the pretrial order could be construed broadly to include the issue of physical damage to the 16th floor and that the pretrial order supersedes the admissions. See Miller v. Safeco Title Ins. Co., 758 F.2d 364, 368 (9th Cir.1985) (A pretrial order "should be liberally construed to permit any issues at trial that are 'embraced within its language.' "). It is true that a pretrial order supersedes the pleadings. Fed.R.Civ.P. 16(e) ("[The pretrial] order shall control the subsequent course of the action."); Donovan v. Crisostomo, 689 F.2d 869, 875 (9th Cir.1982). It is not settled, however, that the pretrial order supersedes admissions. In any case, we need not decide that issue because the pretrial order here framed the issue for trial as "[t]he extent and nature of the physical damage, if any, caused by the ... fire to floor[ ] ... 16." The order reasonably can be read to allow testimony regarding smoke, water, and fire flame damage to the 16th floor, because the parties did not agree on that issue, but not asbestos contamination. The district court did not abuse its discretion in excluding testimony about asbestos contamination on the 16th floor.
 
 
 24
 IV. THE DISTRICT COURT'S FINDINGS OF FACT REGARDING THE AMOUNT OF DAMAGE TO AND RESTORATION TIME REQUIRED FOR FLOORS 15, 16, AND 19 ARE NOT CLEARLY ERRONEOUS.
 
 
 25
 Commonwealth challenges finding of fact 22, the rental value of the 15th floor. That finding is supported by testimony both from Arthur Blech and Richard Thompson, Liberty Mutual's claims adjuster, and it is not clearly erroneous.
 
 
 26
 Commonwealth also challenges the district court's findings as to the period of restoration for the 15th, 16th, and 19th floors, Findings 21, 26, and 30. Blech testified that building operations were suspended generally from March 2, 1989, to January 11, 1991, a period of just over 22 months. When asked to elaborate, Blech testified that 7 months was for removing state tenants, 1.5 to 2 months for demolishing the building interior, 4 to 5 months for removing asbestos, 1 to 2 months for fireproofing and installing sprinklers, and 8 to 10 months for installing tenant improvements, a total of 21.5 to 26 months. Blech later stated a restoration period for the 15th and 16th floors of 20.8 months. In a 1992 deposition, Blech testified that the period of restoration was 6 months after the tenants left.
 
 
 27
 With respect specifically to the 15th floor, exhibits revealed that the time for removing state tenants was at most 5 months, 2 months less than Blech claimed. Douglas Buchanan, a fire damage estimate expert, testified that a reasonable restoration period was 5 to 6 months. Adding a 6-month restoration period, based on testimony by Blech and Buchanan, to a 5-month tenant-vacancy period, based on exhibits, yields an 11-month total restoration period for the 15th floor. Thompson testified that Liberty Mutual originally paid Commonwealth based on what they felt was a reasonable restoration period of 11 months for the 15th floor. Finally, Liberty Mutual argued Blech's 20.8-month estimate was overstated because he had contracted with a new tenant to install sprinklers, remove asbestos, and install tenant improvements on the 15th floor before the fire. Based on this testimony, the district court did not make a clear error in concluding the restoration period for the 15th floor was no more than 11 months.
 
 
 28
 With respect to the 16th floor, Blech testified originally that operations were suspended for 20.8 months. He later testified he believed the floor was occupiable within two weeks after the fire. The district court's finding that the restoration period did not exceed 14 days was not clearly erroneous.
 
 
 29
 Blech testified he did not know what the suspension period was for the 19th floor, but that the restoration process was the same as that for the other floors. Blech later testified he believed the 19th floor, like the 16th floor, was occupiable within two weeks after the fire. Thompson testified that Liberty Mutual paid Commonwealth based on what they felt was a reasonable restoration period of 10 months for the 19th floor. Again, based on the conflicting testimony, the record supports the district court's finding such that it was not clearly erroneous.
 
 
 30
 Finally, Commonwealth challenges findings 23, 28, and 33, the actual rental loss for floors 15, 16, and 19. Those findings focus on the lost rental value per floor multiplied by the restoration period. Because the restoration period findings for floors 15, 16, and 19 and the rental loss finding for floor 15 are not clearly erroneous, and because the rental loss findings for floors 16 and 19 were not challenged, these findings are also not clearly erroneous.
 
 CONCLUSION
 
 31
 The district court's judgment in favor of Liberty Mutual and the dismissal on the merits of Commonwealth's amended cross-complaint are AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral arguments pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3