105 F.3d 665
 1997-1 Trade Cases P 71,770
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NESTLE FOOD CO., Plaintiff-Appellant,
v.
ABBOTT LABORATORIES; American Academy of Pediatrics,
Defendants-Appellees.
 No. 95-56273.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 10, 1996.
Decided Jan. 9, 1997.
 
 Before: PREGERSON, D.W. NELSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Nestle Food Company, ("Nestle") appeals the district court's judgment, following a jury trial, in favor of Abbott Laboratories ("Abbott") and the American Academy of Pediatrics ("AAP"). Nestle alleges that Abbott conspired with its competitors and with the AAP to restrict competition in the infant formula market by enforcing a policy against direct-to-consumer advertising. Nestle claims that a variety of errors at trial tainted the jury's verdict in favor of Abbott and the AAP. Although the jury reached only the threshold question of the existence of a conspiracy, Nestle argues that the district court's instruction on conspiracy incorporated an incorrect instruction on the "restraint" element of an antitrust claim. Nestle also maintains that the district court improperly rejected its requested instructions on the anticompetitive effects of restrictions on advertising and on the irrelevance of good motives. Further, Nestle contends that the district court erred in allowing the AAP to introduce a "public health" defense through the expert testimony of a consumer psychologist and in excluding two sentences from a document produced by Bristol-Myers, one of Abbott's competitors. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I. Jury Instructions
 
 3
 We review the formulation of jury instructions for an abuse of discretion. Masson v. New Yorker Magazine, Inc., 85 F.3d 1394, 1397 (9th Cir.1996). The district court has wide latitude to frame jury instructions, and they should not be disturbed unless the instructions as a whole are misleading or did not adequately guide the jury in its deliberations. Id. Even if we find error, we need not reverse unless the error was more probably than not harmless. Jenkins v. Union Pac. R.R. Co., 22 F.3d 206, 210 (9th Cir.1994).
 
 
 4
 A. Waiver of Challenge to the District Court's Instruction on Conspiracy
 
 
 5
 The district court instructed the jury that Nestle was required to prove, by a preponderance of the evidence: "(1) that defendants Abbott and the Academy knowingly entered into a combination or conspiracy; (2) that the conspiracy unreasonably restrained competition in the relevant market; and (3) that [Nestle] suffered injury to its business or property as the proximate result of the conspiracy." These instructions adequately reflect the elements of a rule of reason case. See Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1488 (9th Cir.1991) (stating that a rule of reason plaintiff must demonstrate "(1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; and (3) which actually restrain competition") (citing Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1373 (9th Cir.1989)).
 
 
 6
 The special verdict form submitted to the jury parallels the district court's instructions. The first interrogatory asks whether Nestle proved the alleged conspiracy. The district court defined a conspiracy as "a combination of two or more persons to accomplish, by concerted action, some unlawful purpose, or to accomplish some lawful purpose by unlawful means."
 
 
 7
 Nestle did not object to the district court's definition of conspiracy or to the special verdict form. Nestle did file an objection to Instruction No. 23, which defined restraint. On appeal, Nestle challenges the verdict on the basis of alleged errors in this instruction.
 
 
 8
 In rendering its verdict, however, the jury responded only to the first interrogatory regarding the existence of a conspiracy; it never formally reached the issue of restraint. Nestle argues that the jury could not consider the issue of conspiracy in isolation from the district court's other instructions. According to Nestle's reasoning, in order to consider the existence of an antitrust conspiracy, the jury had to take unlawfulness into account. Nestle maintains that the inquiry into unlawfulness was guided by the district court's instruction on restraint.
 
 
 9
 We reject Nestle's argument that the jury "must have" considered a question on which it did not render a decision.[1] We conclude that Nestle's objection to the district court's explanation of restraint does not constitute an objection to the instruction defining conspiracy as well. Therefore, we find that Nestle has waived its objection to the conspiracy instruction.
 
 
 10
 Rule 51 clearly states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51; see also 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2554 (1995) ("[A]n objection to one part of the charge [will not] permit a party to assert error later in a different part of the charge."). In Hammer v. Gross, we made it clear that the Ninth Circuit "enjoyed a reputation as the strictest enforcer of Rule 51." 932 F.2d 842, 847 (9th Cir.), cert. denied, 502 U.S. 980 (1991). We see no reason not to enforce the rule against Nestle in this case.
 
 
 11
 Furthermore, because the jury never reached the issue of restraint, we note that any error in the district court's instructions was harmless.
 
 
 12
 B. Requested Instruction on Inherent Anticompetitiveness
 
 
 13
 The district court elected not to direct the jury that a restraint on advertising is anticompetitive as a matter of law. Nestle argues that it was entitled to the instruction that an agreement to restrict advertising is inherently anticompetitive under Bhan v. NME Hospitals, Inc., 929 F.2d 1404 (9th Cir.), cert. denied, 502 U.S. 994 (1991).
 
 
 14
 Even in a rule of reason case, an agreement may be found anticompetitive on its face. Bhan states that a "full-blown market analysis is not necessary" to establish that a practice is an unreasonable restraint of trade. Id. at 1413. However, Bhan also requires plaintiffs to make some showing that "the restraint has actually produced significant anti-competitive effects, such as a reduction in output." Id.; see also Federal Trade Comm'n v. Indiana Fed'n of Dentists, 476 U.S. 447, 461 (1986) (finding an elaborate market analysis unnecessary where there were "actual, sustained adverse effects on competition").
 
 
 15
 In this case, the parties disputed both the force and the effect of the AAP's ban on advertising. In support of the instruction, Nestle points to testimony of AAP officials indicating their interest in limiting the output of infant formula, but Nestle did not demonstrate that the AAP achieved that goal through its policy against advertising. Moreover, Abbott and the AAP challenged the extent to which the AAP's policy affected Nestle's choices. As Abbott and the AAP point out, Nestle advertised Good Nature on television until March 1989, and began advertisements for both Good Start and Good Nature in 1991. In addition, Mead Johnson began advertising the Gerber brand in 1989. Given the disputed factual issues, the district court properly left it to the jury to determine whether the AAP's policy against advertising was an unreasonable restraint on competition.
 
 
 16
 Moreover, the refusal to instruct that a restraint on advertising is inherently anticompetitive was more probably than not harmless. See Jenkins, 22 F.3d at 210. The jury decided this case on the threshold question of whether an agreement to restrain trade existed; it did not reach questions concerning the effect of that agreement on competition.
 
 C. Requested Instruction on Good Motives
 
 17
 Nestle also requested that the court instruct the jurors that: "It is not necessary for [Nestle] to prove that the defendants were motivated by evil intentions, and likewise good motives or good intentions cannot excuse conduct which is otherwise a violation of the antitrust laws." The district court ultimately instructed the jury that: "The focus of concern in an antitrust case is whether the practice or conduct being challenged has restrained trade. Under the antitrust laws, a practice that restrains trade cannot be justified by showing that the practice serves some other social goal, such as the goal of advancing public health."
 
 
 18
 The court's instruction closely tracks the language of National Soc'y of Prof'l Eng'rs v. United States, in which the Supreme Court rejected the defendants' claim that a restriction was justified because "bidding on engineering services is inherently imprecise, would lead to deceptively low bids, and would thereby tempt individual engineers to do inferior work with consequent risk to public safety and public health." 435 U.S. 679, 692 (1978). After Professional Engineers, it is clear that the purpose of an analysis under the antitrust laws "is to form a judgment about the competitive significance of the restraint; it is not to decide whether a policy favoring competition is in the public interest, or in the interest of the members of an industry. Subject to exceptions defined by statute, that policy decision has been made by Congress." Id.
 
 
 19
 Although the district court did not specifically state that "good motives are not a defense," Nestle identifies no meaningful distinction between the requested instruction and the instruction given. The good motive at issue in this case is the goal of advancing public health. "There is no error in failing to give an instruction in the precise words of the party's request if its substance is stated clearly or if it is covered adequately by the court's charge to the jury." Wright & Miller § 2552; see also Investment Serv. Co. v. Allied Equities Corp., 519 F.2d 508, 511 (9th Cir.1975) (holding that the court need not use the precise words of an offered instruction; the instruction is sufficient if it states correctly the relevant principle of law). Because the instructions actually given "sufficiently cover the case and are correct statements of the law," the judgment should not be disturbed "because of the district court's refusal to give alternative instructions proposed by a party." Wright & Miller § 2552. Nestle's argument that the district court committed reversible error by rejecting its proposed instruction is without merit.
 
 II. Admission of Expert Testimony
 
 20
 At trial, the district court permitted Abbott and the AAP to introduce the testimony of Valerie Folkes, an expert in consumer psychology. Folkes testified that the promotion of infant formula directly to consumers would have the effect of reducing the incidence and duration of breast feeding, thereby endangering the public health. She illustrated her testimony with a "Consumer Decision Making Model" that featured photographs of mothers with infants.
 
 
 21
 Nestle argues that Folkes' testimony did not increase or decrease the probability of any fact that was "of consequence to the determination of the action" and was therefore irrelevant under Fed.R.Evid. 401. Nestle claims that Abbott and the AAP's public health motivations were not properly in issue and that Folkes' testimony did not directly relate to the AAP's motives, as she had been retained by them after the conduct in question and could not testify to what the AAP believed in 1988 and 1989.
 
 
 22
 Evidentiary rulings are reviewed for an abuse of discretion, and should not be reversed unless they are prejudicial. Masson, 85 F.3d at 1399. The district court's decision to admit expert testimony does not warrant reversal unless it is "manifestly erroneous." United States v. Wang, 49 F.3d 502, 504 (9th Cir.1995). Any conceivable error here does not meet that standard, and we conclude that the trial judge did not abuse his discretion in allowing Folkes to testify.
 
 
 23
 Folkes' testimony countered Nestle's assertions that the AAP had no justification for its policy against advertising. Because the testimony suggested that the AAP's policies were the product of independent initiative and did not arise from an agreement with Abbott or other infant formula manufacturers, it tended to disprove Nestle's allegations of conspiracy. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986) ("[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.") (citing Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764 (1984)).
 
 
 24
 Moreover, we agree with Abbott and the AAP that Nestle "opened the door" to evidence on the reasonableness of the AAP's belief that direct marketing reduces breast feeding by putting that belief in issue in its trial strategy. See Johnson v. INS, 971 F.2d 340, 343-44 (9th Cir.1992) ("When an appellant's 'tactics backfire[ ]' he cannot complain of error he induced.") (quoting United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 506 U.S. 890 (1992)).
 
 
 25
 We also reject Nestle's claim that the photographs Folkes used as exhibits were "inflammatory and prejudicial." The district court found that they were "intended to depict the type of person who is a consumer, [or] potential consumer" and that they were "in good taste." The district court has "considerable latitude in performing the Rule 403 balancing test," Rogers v. Raymark Indus., Inc., 922 F.2d, 1426, 1430 (9th Cir.1991); its decision here does not constitute reversible error.
 
 
 26
 Moreover, even if we found Folkes' testimony technically irrelevant, or concluded that the photographs were more prejudicial than probative, the district court's ruling would not require reversal unless substantial injustice resulted. Fed.R.Civ.P. 61. In this case, the injury of Folkes' testimony was limited. The jury received the same information in a variety of forms, and the court instructed the jury that the goal of advancing public health was not a defense in an antitrust case.
 
 III. Exclusion of Coconspirators' Statements
 
 27
 Nestle attempted to offer into evidence an internal memorandum prepared by the Mead Johnson division of Bristol-Myers. The document states that Bristol-Myers executives met with the AAP to discuss Nestle activities and the AAP position on consumer advertising. The portion of the document that was redacted after Abbott's objection states that the "AAP will, in the near future, reaffirm their policy against consumer advertising. They will consider Good Nature an infant formula which falls under that policy." Nestle argues that the redacted sentence provided the only evidence linking the August 22nd meeting to the publication of the AAP's follow-up formula policy statement six weeks later.
 
 
 28
 The district court found the document relevant but concluded that the two redacted sentences were not admissible under the coconspirator exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(E). Rule 801(d)(2)(E) provides that a statement is not hearsay if it "is offered against a party and is ... a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." The district court did not question that the memorandum was in the course of the alleged conspiracy; the court based its ruling on its determination that the statements were not assertions of "past fact." In its ruling, the court cited Dutton v. Evans, 400 U.S. 74, 88 (1970).
 
 
 29
 Whether the district court correctly interpreted Rule 801(d)(2)(E) is a question of law reviewed de novo. United States v. Layton, 855 F.2d 1388, 1398 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989). We note that the district court misstated the law on this point. Rule 801(d)(2)(E) contains no requirement that coconspirators' statements be assertions of past fact. Indeed, in Dutton v. Evans the Supreme Court concluded that a state's coconspirator exception to the hearsay rule did not violate the Confrontation Clause. The Court reached that decision in part because it found that "the statement contained no express assertion about past fact, and consequently it carried on its face a warning to the jury against giving the statement undue weight." Id. at 88. In other words, the fact that a statement does not concern a past fact counsels in favor of admission. See also United States v. Layton, 720 F.2d 548, 557 (9th Cir.1983) ("The statements were not narrations of past events, but expressions of future criminal intent. They may be excluded only if they did not further the objectives of the conspiracy."), cert. denied, 465 U.S. 1069 (1984). Moreover, Bourjaily v. United States, 483 U.S. 171, 183-84 (1987), clarifies that the trial court need not independently inquire into the reliability of statements that fall with the coconspirator exception to the hearsay rule.
 
 
 30
 The district court's error on this point, however, was harmless and does not require reversal. Fed.R.Civ.P. 61; City of Long Beach v. Standard Oil Co., 46 F.3d 929, 936 (9th Cir.1995) (reversal requires a showing of some prejudice). Although Nestle had no other evidence directly linking the meeting between Mead Johnson and the AAP to the publication of the AAP's follow-up formula policy, it did offer other evidence of the meeting itself, and of the meeting's focus on Nestle's advertising policy. Moreover, the two statements would have demonstrated to the jury only that Mead Johnson had discussed follow-up formula with the AAP, not that Abbott had done so, and not that either company had entered into an agreement with the AAP. We need only find that the evidentiary error was more probably than not harmless. Haddad v. Lockheed Cal. Corp., 720 F.2d 1454, 1459 (9th Cir.1983). Because this evidence was both "largely tangential" and "partially cumulative," id. at 1460, the district court's error does not warrant reversal of the jury's verdict.
 
 
 31
 IV. Denial of Abbott and the AAP's Motion for Judgment as a Matter of Law
 
 
 32
 Because the panel may affirm the judgment of the district court "on any basis supported by the record," Abbott and the AAP urge this court to find that they were entitled to judgment as a matter of law. See Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 387 (9th Cir.1994) (citing United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992), cert. denied, 113 S.Ct. 1945 (1993)).
 
 
 33
 The district court's denial of Abbott and the AAP's motions for judgment as a matter of law is reviewed de novo. Oglesby v. Southern Pac. Transp. Co., 6 F.3d 603, 605 (9th Cir.1993).
 
 
 34
 Under Fed.R.Civ.P. 50(a)(1), where "there is no legally sufficient evidentiary basis for a reasonable jury to find" that a party has met its burden on a necessary issue, the court may grant judgment as a matter of law. Abbott and the AAP argue that Nestle could not meet its burden to demonstrate a restraint of trade. The district court found, however, that a reasonable jury could find restraint for purposes of liability under section 1 of the Sherman Act. Although Nestle admitted that it was free to advertise if it chose to do so, the district court decided that it was appropriate for the jury to determine if the constraints on that choice unreasonably inhibited competition in the infant formula market. The district court concluded in response to two separate motions that "the jury must decide whether or not [Nestle] was restrained." Abbott and the AAP have not advanced an argument that compels this court to disturb that decision.
 
 
 35
 We affirm the judgment in favor of Abbott and the AAP. Nestle waived its objection to the district court's instruction on conspiracy, and it was not entitled to an instruction either on the inherently anticompetitive nature of restraints on advertising or on the irrelevance of good motives. Moreover, the district court's decision to allow Folkes' testimony was not "manifestly erroneous," and its erroneous interpretation of the coconspirator exception did not result in "substantial injustice." We also affirm the district court's denial of Abbott and the AAP's motions for judgment as a matter of law.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Nestle's primary support for this argument is a jury note to the court posing a question about Instruction No. 23. We believe that the jury's query, six days before it rendered a verdict, is consistent with a number of explanations about the course and focus of the jury's deliberations. To entertain Nestle's theory would require this court to look behind the jury room door, which is an inquiry we decline to make