132 F.3d 41
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James F. WEIMER, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, Defendant-Appellee.
 No. 96-35880.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1997.
Decided Dec. 11, 1997.
 
 1
 Appeal from the United States District Court for the Eastern District of Washington, No. CV-95-0444-FVS; Fred Van Sickle, District Judge, Presiding.
 
 
 2
 Before FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Plaintiff/Appellant appeals an evidentiary ruling of the district court and appeals the district court's grant of summary judgment in favor of the defendant. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 ANALYSIS
 
 5
 The district court's grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). The appellate court must view all facts in the light most favorable to the non-moving party, Mr. Weimer. Id. The district court's decision regarding the admissibility of evidence is reviewed for an abuse of discretion. Masson v. New Yorker Magazine, 85 F.3d 1394, 1399 (9th Cir.1996).
 
 
 6
 Mr. Weimer sued the United States under the Federal Tort Claims Act. 28 U.S.C. § 2671 et. seq. Under this Act, the United States is liable in the "same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Because the accident occurred in the State of Washington, Washington law applies. See 28 U.S C. § 1346(b); McCall v. U.S. Dep't of Energy, 914 F.2d 191, 193 (9th Cir.1990).
 
 
 7
 In Washington, a plaintiff in a negligence action must prove: the existence of a duty owed; breach of duty; injury; and proximate cause. Tincani v. Inland Empire Zoological Soc'y, 875 P.2d 621, 624 (Wash.1994). Weimer contends that the government owed him a duty of care as a principal and as a landowner or as either.
 
 
 8
 Generally, one who hires an independent contractor owes no duty of care to that contractor's employees. Hennig v. Crosby Group, Inc., 802 P.2d 790, 791 (Wash.1991). Under Washington law, a principal may be found to have assumed a duty to provide a safe workplace for its independent contractor's employees in limited circumstances.
 
 
 9
 First, if the employer of an independent contractor retains some control over the work of that contractor, the employer has a duty, within the scope. of that control, to provide a safe workplace. Kelley v. Howard S. Wright Constr. Co., 582 P.2d 500, 505 (Wash.1978). Second, a principal, as landowner, owes a duty to the independent contractor's employees, as invitees, to provide a workplace free from latent dangers. Id. at 506.
 
 
 10
 Each of these grounds for imposing liability is discussed below. Before doing so, however, it is necessary to address Mr. Weimer's procedural claim to determine whether the evidence regarding the government's actions after the accident should be considered.
 
 I. The Evidentiary Issue
 
 11
 Weimer seeks to introduce into evidence the government's request, after the accident, that DeRuwe, Inc., its contractor, drill holes in the dust caps. The government concedes that its request was motivated by a concern for safety. The district court excluded that evidence under Fed.R.Evid. 407 because it was a subsequent remedial measure. We agree.
 
 
 12
 Although Rule 407 excludes evidence of subsequent remedial actions to show negligence, Weimer claims that the evidence of the government's actions is being offered for a permissible purpose--to show that the government maintained some control over the operations of the irrigation system. The justification for such use is that control may prove the existence of a duty in the defendant, precisely the issue in this case. 23 Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure § 5287 (1980); see also, Caulsen v. Sea-3, Inc., 21 F.3d 1181, 1191 (1st Cir.1994) (holding that where issue was which defendant controlled area where injury occurred, evidence that one party repaired the area after the accident, at the request of another party, is admissible to show control).
 
 
 13
 However, there is no dispute in this case that the government, as owner of the irrigation system, ultimately maintained control over the system and its own lands. The type of control that Weimer must show in this case to prove that the government assumed a duty of care as to him is control over the performance of the work or the method used--not control over the system itself. See infra, Part II.
 
 II. Duty as Principal
 A. The Contract
 
 14
 Under Washington law, one who hires an independent contractor, but contractually retains some control over the performance of that contractor's work or the method used, may assume a duty to insure the safety of that contractor's employees. Hennig, 802 P.2d at 791-92; Kelley, 582 P.2d at 505. The principal must have the right to be involved in the performance of the work, not merely the right to oversee compliance with the contract between it and the independent contractor. Hennig, 802 P.2d at 792.
 
 
 15
 In the contract between DeRuwe and the government, the government retained the ability to stop the contractor's work if the government believed that the safety of the public or government personnel was threatened:
 
 
 16
 (a) The Contractor shall provide and maintain work environments and procedures which will (1) safeguard the public and government personnel, property, materials, supplies, and equipment exposed to Contractor operations and activities....
 
 
 17
 (d) Whenever the Contracting Officer becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, the Contracting Officer shall notify the Contractor orally, with written confirmation, and request immediate initiation of corrective action.... If the Contractor fails or refuses to promptly take corrective action, the Contracting Officer may issue an order stopping all or part of the work.
 
 
 18
 As the district court noted, this contractual provision does not grant the government any control over, or any responsibility for, the employees of DeRuwe. By contrast, where a contractual assumption of duty to provide a safe workplace has been found under Washington law, the contact unambiguously provided that the principal retained control over, and had responsibility for, the way in which work was performed by the employees of the independent contractor. See Kelley, 582 P.2d at 506 (holding that principal assumed a nondelegable duty of care to employees of its independent contractor where contract stated that principal had responsibility for "initiating, maintaining and supervising all safety precautions and programs").
 
 
 19
 General contract provisions which give the principal the right to insure compliance with the contract, including the right to insure that the independent contractor is fulfilling its contractual obligation to abide by state and federal safety regulations, do not give the principal the level of control that is needed to impose a duty of care on the principal. See Hennig, 802 P.2d at 792; see also Bozung v. Condominium Builders, Inc., 711 P.2d 1090, 1093 (Wash.Ct.App.1985) ("General contractual rights as the right to order the work stopped ... do not mean that the [principal] controls the method of the subcontractor's work."); Campbell v. United States, 493 F.2d 1000, 1001 (9th Cir.1974) (holding that under Washington law, the government had no duty as to the employees of its independent contractor where government personnel were on-site and took part in safety meetings but were there only to insure that safety provisions of the contract were fulfilled and took no part in "directing Plaintiff's job performance").
 
 
 20
 Nor is this the case, as Weimer asserts, in which the contract is ambiguous as to which party controlled the day-to-day operations of the independent contractor. In Kennedy v. Sea-Land Serv., Inc., 816 P.2d 75, 84-85 (Wash.Ct.App.1991), upon which Weimer relies, the contract had stated both that the independent contractor was to have complete control over the work done and that the independent contractor's supervision of its employees would be "subject always to direction and supervision" of the principal. Id. at 84. The contract further stated that the independent contractor would have to "abide by the policies, rules and procedures" that the principal may from time to time impose. Id.
 
 
 21
 The contract between DeRuwe and the government, however, contains no such ambiguities. Safety responsibilities vis-a-vis the employees were assigned to DeRuwe. DeRuwe was required to mandate that certain protective clothing and footwear be worn, comply with OSHA, develop a safety plan, and conduct safety training and meetings. As to these obligations, the government retained no right to intervene, beyond its capacity to insure compliance with the contract.
 
 B. The Government's Conduct
 
 22
 Weimer further contends that the text of the contract is not controlling if the government was actively involved in supervising the operations at the habitat. The courts in Washington look beyond the mere terms of the contract to determine if a principal has retained some control of the workplace. See Phillips v. Kaiser Aluminum & Chem. Corp., 875 P.2d 1228, 1235 (Wash.Ct.App.1994) ("Whether a right to control has been retained depends on the parties' contract, the parties' conduct, and other relevant factors. ").
 
 
 23
 Weimer's evidence of actual control includes the following: (i) The contracting officer, Ackerman, a wildlife biologist, had, in the past, instructed one of the workers to put on his hard hat; (ii) comments from the contracting officer at deposition implying that he believed that his duty when overseeing the operations at Skookum Habitat included looking out for the safety of the employees;[1] and, (iii) the government's request to DeRuwe to drill a hole into each dust cap that didn't already have one. (However, we have already ruled that this evidence should not be considered.)
 
 
 24
 To find duty, the courts in Washington require that plaintiffs show evidence that the principal controlled the performance or method of the work, not merely that the principal insured compliance with the contract. For example, in Phillips, liability of the principal was found where the principal directed that the work of the independent contractor's employees be performed with chain saws; conducted meetings each morning to address safety issues; and routinely gave directions to the employees related to safety. 875 P.2d at 1236. In Hennig, the Washington Supreme Court noted that something more than retaining the right to insure compliance with the contract was needed (even if compliance is directed to safety-related contractual terms), noting that because the defendant did not "actively supervise [the independent contractor's] employees," liability would not attach. 802 P.2d at 792. And in Bozung, the Washington appellate court upheld summary judgment in the principal's favor because, although the principal had the "right to order the work stopped or to control the order of the work or the right to inspect the progress of the work," such general contractual rights do not mean that the principal "controls the method of the subcontractor's work." 711 P.2d at 1093 (emphasis added).
 
 
 25
 By contrast, Ackerman stated that his primary function was to insure compliance with the contract, that he gives DeRuwe "leeway" in the supervision of his own employees, that DeRuwe is the person responsible for training the employees to operate the system in a safe manner, that he never attends safety meetings, and that neither he nor any other government employee supervise the day-to-day activities of DeRuwe or his employees.
 
 
 26
 The evidence produced by Weimer suggests no more than that the government supervised the operation to the extent necessary to determine that DeRuwe was in compliance with the contract; there is no evidence to raise a genuine question regarding whether the government was actively involved in the supervision of DeRuwe's employees in terms of directing the performance or method of their work.
 
 III. Duty as Landowner
 
 27
 An employee of an independent contractor "enjoys the status of an invitee of the owner of the premises on which he is working." Bozung, 711 P.2d at 3093 (citing Greenleaf v. Puget Sound Bridge & Dredging Co., 364 P.2d 796 (Wash.1961)). A landowner.is liable to an invitee if he or she breaches his or her duty to "keep the premises under his control reasonably safe and to warn of dangers which are not obvious," but has no liability for the negligence of the independent contractor. Phillips, 875 P.2d at 1234 (quoting Lamborn v. Phillips Pac. Chem. Co., 575 P.2d 215 (Wash.1978)) (internal quotation marks omitted).
 
 
 28
 We agree with the government that it fulfilled its duties as a landowner as to Weimer. The government required DeRuwe to follow the safety manual and shut down the main pump, thereby eliminating the possibility that the dust caps would explode upward with the force of the water. If the operations manual is followed, the undrilled dust caps, by themselves, present no latent danger. Weimer admits that had that procedure been followed, the accident would have been prevented.
 
 
 29
 There is also uncontroverted evidence that Weimer was on notice that there was a problem with the particular riser head with which he was working. He testified in deposition that when he tried to remove the dust cap the coupler would not move, and that he had never encountered a coupler that would not move. Because the dust cap was still attached to the riser head, he was also on notice that the sprinkler head with which he was working had not yet been de-winterized for the season. Finally, Weimer admitted that he was aware that the prudent thing to do when confronted with this unusual situation was to shut down the entire system until the problem was identified.
 
 CONCLUSION
 
 30
 The district court did not abuse its discretion in not admitting the evidence of the government's actions after the accident as it involved a subsequent remedial measure. Nor did it err in granting summary judgment in favor of the government. Weimer has failed to produce any evidence which would suggest that the government exhibited the type of control--control over the performance of the employees' work or the method used--that is necessary to show an assumption of the duty of care in Washington. He also failed to raise a genuine issue regarding the government's duty as a landowner. The government mandated that DeRuwe's employees follow the procedures outlined in the operations manual, and Weimer was aware that there was a potential problem with the riser head with which he was working.
 
 
 31
 The district court's judgment is therefore AFFIRMED.
 
 
 
 **
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District, of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Q. So it's clear that the Corps retains control in the safety area of the contractor's employees and the contractor's work?
 A. To a certain extent, yes, within--following the safety manual and whatever specific safety concerns are brought out in the contract.
 Q. [In response to a question regarding another government employee's responsibility]
 A. The only concern we have is if they're not performing their job safely, you know, we remind them to do it safely or they can't work. And that's as far as it gets. And then we notify their supervisor, and if they have a problem with this person, we can even request that they might need to remove the employee....
 (emphasis added).