Lana GUEBARA, Plaintiff–Appellant–Cross–Appellee,

v.

ALLSTATE INSURANCE COMPANY, Defendant–Appellee–Cross–Appellant.

Nos. 98–55458, 98–55459.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1999

Filed Jan. 12, 2001

Alan L. Geraci, Frantz & Geraci, San Diego, California, for the plaintiff-appellant-cross-appellee.

Charles A. Bird (argued), Peter H. Klee, Lawrence J. Kouns, Luce, Forward, Hamilton & Scripps LLP, San Diego, California, counsel for the defendant-appellee-cross-appellant.

Before: B. FLETCHER, D.W. NELSON, and BRUNETTI, Circuit Judges.

Opinion by Judge D.W. NELSON; Dissent by Judge BETTY B. FLETCHER.

D.W. NELSON, Circuit Judge:

The issue this case presents is whether the district court violated California law in dismissing appellant Lana Guebara's bad faith claims because there were genuine issues as to coverage. Guebara argues that the "genuine issue" rule should be limited to disputes over contractual language and California insurance law. We hold that the district court did not err in

applying the genuine issue rule to this case, and we affirm.

## I. FACTUAL BACKGROUND

On May 17, 1995, Lana Guebara's house burned down. The one-story house in Niland, California, was appraised at $35,000 as of April 7, 1995. Guebara was attempting to sell the house (although it needed considerable electrical and structural work), in which she owned a 50 percent interest. The house was insured by Allstate under a "Deluxe Homeowners Insurance" policy, which contains a "fraud and concealment" provision that says:

> This policy is void if it was obtained by misrepresentation, fraud, or concealment of material facts or if you intentionally conceal or misrepresent any material fact or circumstance, before or after loss.... If it is determined that this policy is void, all premiums paid will be returned to you since there has been no coverage under this policy.

Guebara contacted Allstate on the day of the fire, which killed four of her dogs and destroyed most of her belongings. Allstate immediately advanced Guebara $3000 for living expenses. A week after the fire, Allstate referred her claim to its Special Investigations Unit because independent fire investigators believed that Guebara had overstated the quantity and value of her personal property allegedly destroyed by the fire. Investigators also continued to probe the cause of the blaze.

On May 18, 1995, the day after the fire, Allstate's claims adjuster, Joel Alba, interviewed Guebara. When Alba asked Guebara about appliances in the house at the time of the fire, she mentioned a washer, dryer, refrigerator, and stove. Alba also asked her about television and stereo equipment:

Q: Okay, what about the, do you have any TVs or anything like that?
A: I had a console TV.

* * *

Q: Any stereo systems or anything like that?
A: No, I had an antique dresser that was about 100 years old.
Q: Okay, and any other electronic equipment or appliances that I did not, major appliances?
A: Oh, a microwave.

Four days later, Guebara and her daughter, Karen Dixon, provided Allstate with a formal list of personal property destroyed by the fire. The list was several pages long and contained items valued at $18,000, including a stereo, a VCR, $350 worth of video cassettes, and $1000 worth of camping equipment.

Allstate's investigators returned to the scene of the fire on May 25, 1995, with Guebara's list in hand. Dave Johnson, an independent fire investigator hired by Allstate, inspected every room of the house along with the Niland Fire Department's Chief Mike Aleksick and Captain Lynn Mara.[1] Johnson found remains of about only 20 percent of the items on Guebara's list and found no trace of the following: VCR, one of the ceiling fans, stereo, cassette deck, turntable, pressure cooker, luggage, jewelry boxes, camping equipment, coin collection, Kirby vacuum cleaner, electric broom, rug shampooer, headboards, Singer sewing machine, night stand, video cassettes, video games, Polaroid camera, 35 mm camera, first aid kits, crock pots, or crystal glass. Johnson's report filed with Allstate in late May indicated that most of these items, if they were in the house at the time of the fire, should have left some type of residue.

On May 25, 1995, Dixon called Allstate in order to express concern about the fire department taking additional pictures of the home. Dixon informed Alba that she and a friend had gone through the house and moved debris around while trying to identify damaged items. Dixon did not mention that she had removed anything

---

1. Johnson, a fire investigator for 35 years, originally investigated the scene on the day after the fire. Chief Aleksick was out of town on the day of the fire, but he took over the investigation of the fire upon his return.

from the scene. On May 26, 1995, Guebara's sister and co-owner of the property, Sharon Jensen, informed Allstate that Guebara was in the process of taking a $28,000 loan on the property in order to repair the house and to repay Jensen. That same day, Allstate referred the case to its Special Investigations Unit and informed Dixon that the investigation would be completed in 30 days. The Niland Fire Department was still investigating the fire's cause. On June 5, 1995, Allstate informed Guebara that no further payment would be made until the investigation was completed.

On June 21, 1995, Allstate confronted Guebara with inconsistencies between the contents list and the experts' investigation. During an examination under oath (EUO), Guebara was asked why she had not mentioned anything about a stereo or a VCR during her initial interview and why fire investigators did not find remnants of these items. Guebara eventually withdrew the VCR from the contents list, explaining that Dixon had removed it from the house in 1994. Guebara never mentioned that Dixon and Dixon's friend had removed any items from the house after the fire. Guebara claimed that the missing contents burned up in the heat of the fire.

On July 17, 1995, Guebara's attorney notified Allstate that Dixon had removed some items from the house during a "scavenger hunt" following the fire. On September 8, 1995, Allstate took the statements of Dixon and her friend, Suska Brandon. They stated that they had rummaged through the remains of the house on May 20 and 21, 1995. Dixon said that she found nonsalvageable items such as the sewing machine, describing them as "blobs." She said that she removed the items in order to show her children what fire could do so they would not play with matches. Dixon said that she took the items in three garbage bags back to their motel, but she threw them away because they smelled bad. Guebara later testified that Dixon's children were at the house during the scavenger hunt. Dixon eventually added to her transcript that she re-

moved the items in order to help her mother cope with the loss. Brandon said Dixon had made a list of the items that they found. Dixon, however, testified that she did not make a list.

On October 23, 1995, Dixon requested a copy of the audiotape of her recorded statement. Upon being asked to review, correct and sign her transcript, Dixon claimed that her transcript did not reflect her actual interview. Allstate mailed Dixon and Brandon their audiotapes on November 20, 1995. Allstate again inquired on February 14, 1996 why Dixon and Brandon had not signed and corrected their transcripts. Two weeks later, Allstate's counsel received signed copies of the transcripts. On March 4, 1996, the co-owners of the house accepted Allstate's $17,500 offer for one-half of the actual cash value of the structure. On April 3, 1996, Allstate sent Guebara a letter stating that it was not conducting an arson investigation. Yet Allstate indicated that it was continuing to investigate Guebara's contents claim.

The opinions of Allstate's independent experts contradicted Dixon's and Brandon's explanations about the missing items. Johnson said that he had been at the site on three different days and saw no signs that anyone had been rummaging through the debris. On April 12, 1996, Johnson issued a report after reviewing all of the testimony from Guebara, the fire chiefs, and Guebara's witnesses. Johnson concluded that the physical evidence did not support Guebara's claims of loss of contents:

> Ms. Dixon stated that on May 20 and 21, 1995 she, her mother (Ms. Guebara) and Ms. Brandon visited the fire scene.... During the visits they went through the rubble in an effort to find salvageable items.... Ms. Dixon described most of the items in vague terms, i.e., blobs, melted plastic, torched, etc. It is difficult to understand how the untrained eye of Ms. Dixon was able to identify so many items.

The investigator visited the scene on three occasions, May 18, 20 and 25, 1995. There were no significant changes in the fire scene between the May 18 and 25 visits. If any salvageable items remained in the house they would have been small items in areas that would have been protected, i.e., in the lower portion of dresser drawers and cabinets, under linens, etc. In order to retrieve these items considerable excavation would have been required. There was no evidence of that having occurred.

Chief Aleksick confirmed Johnson's conclusions that there were no signs of excavation. Although Aleksick concluded that the fire started on the kitchen stove, he stated no exact conclusions regarding his suspicions of arson.[2]

On June 7, 1996, Allstate received a letter from Guebara's attorney indicating that he had been dismissed from the case. The letter also informed Allstate of other witnesses who had seen the items before they were allegedly lost in the fire. Allstate subsequently interviewed those witnesses. On June 25, 1996, Guebara informed Allstate that she had re-hired her attorney. On September 6, 1996, Allstate sent Guebara a letter denying her contents claim on the grounds of misrepresentation as to the personal property allegedly destroyed by the fire.

In September 1996, Guebara served Allstate with a lawsuit alleging eight causes of action, including breach of contract and breach of the implied covenant of good faith and fair dealing (bad faith). On April 21, 1997, Allstate moved for summary judgment on all claims except breach of contract. On June 3, 1997, the district court granted Allstate's motion, including the bad faith claim with regard to the contents but excluding the bad faith claim with regard to the structure. In dismissing the bad faith claim with regard to the contents, the district court said: "In the instant case, Allstate presents considerable evidence to support its contention that there was a 'genuine issue' as to its duty to pay Plaintiff benefits for her contents claim under the policy."

After granting Allstate's motion for reconsideration, the district court also granted Allstate's summary judgment motion on the bad faith claim with regard to the structure. The district court concluded that a genuine issue existed about the structure claim, given the fraud and concealment language in the policy and the majority rule (though unaddressed in California) that a material misrepresentation about a personal property claim may void a claim about the structure.

The district court denied Guebara's motion for reconsideration about bad faith as to the contents claim. The district court was unpersuaded by Guebara's new evidence, which included: (1) a deposition from Chief Aleksick acknowledging that some of the items had been found; (2) photographs of the debris taken in June 1995; (3) personal photographs taken well before the fire; and (4) debris found by Guebara's attorney in a dumpster on her property two years after the fire. The district court, however, granted Guebara's

---

**2.** Chief Aleksick suspected arson based on the following factors: (1) the house was for sale; (2) major electrical and structural repairs were needed; (3) Guebara called the insurance company while the house was burning; (4) Guebara changed her story about the last time she cooked, and what time she left the house; (5) Guebara cited electrical problems, yet all of the appliances were plugged in; (6) the windows were open; (7) Guebara jokingly told her friend that she hoped it wasn't her house; (8) she was present when the fire department put out a fire at a friend's house several weeks earlier; (9) Guebara told some- one at the scene she was insured for $69,000; (10) Guebara made coverage inquiries to Allstate several days before the fire; (11) Guebara changed her story three times about when she left her home prior to the fire; (12) Guebara's daughter told investigators the fire could not have started in the kitchen because she crawled out the window and looked at the stove; (13) Guebara's daughter used terms like "altered scene," a term fire investigators use; and (14) Guebara's daughter made statements about removing some items from the scene.

pre-trial motion excluding any evidence of arson, finding that Allstate had waived the affirmative defense because it denied that it was conducting an arson investigation.

On September 30, 1997, a jury found breach of contract and awarded Guebara $34,924. The district court did not award any attorneys' fees. Judgment was entered in Guebara's favor on January 12, 1998. Guebara timely appealed the district court's dismissal of her bad faith claims. Allstate cross-appealed the district court's order excluding evidence of arson and the court's instructions regarding the jury's calculation of damages.

## II. STANDARD OF REVIEW

■ We review a grant of summary judgment or partial summary judgment de novo. *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir.1999); Fed.R.Civ.P. 56(c). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Burrell*, 170 F.3d at 954.

■ We review evidentiary rulings for an abuse of discretion. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir.1999).

■ We review a district court's formulation of civil jury instructions for an abuse of discretion. *Gilbrook*, 177 F.3d at 860. When the alleged error is in the formulation of the instructions, the instructions are to be considered as a whole and an abuse of discretion standard is applied to determine if they are misleading or inadequate. *See Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1397 (9th Cir.1996).

## III. GENUINE ISSUE AS TO INSURER'S LIABILITY

■ In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. *See Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246 (1990). The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable. Under California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage:

> [A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed *a genuine issue as to the insurer's liability.* An insurer is liable for breach of the implied covenant of good faith and fair dealing if it acted unreasonably in denying coverage.

*Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 571–74, 108 Cal.Rptr. 480, 484–86, 510 P.2d 1032, 1035–37 (1973) (in bank)) (other citation omitted) (emphasis added). *See also Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1280–81, 31 Cal.Rptr.2d 433, 439 (1994) ("[t]he mistaken withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability") (citing *Opsal v. United Serv. Auto. Ass'n*, 2 Cal.App.4th 1197, 1205, 10 Cal.Rptr.2d 352, 356 (1991)); *Dalrymple v. United Servs. Auto. Ass'n*, 40 Cal.App.4th 497, 523, 46 Cal.Rptr.2d 845, 859 (1995) ("an insurer can erroneously dispute coverage without acting in bad faith").

Guebara argues that the genuine issue as to coverage rule (also known as the genuine dispute doctrine) should not be applied to allegations of a biased investigation; rather, the rule should be limited to when there is a dispute over the meaning of a contractual provision or unsettled California insurance law. The dissent refashions Guebara's claim into an argument that the genuine issue as to coverage rule should be limited to disputes that are quin-

tessentially legal, but not applied to disputes that are quintessentially factual.

■ Although California law governs our resolution of this case, the California Supreme Court, has not discussed the scope of the "genuine issue" rule. Our task is to surmise how the state supreme court would decide the issue. The holding in a recent California Appeals Court decision, though not controlling, is instructive: "The 'genuine dispute' doctrine may be applied where the insurer denies a claim based on the opinions of experts." *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1291, 97 Cal.Rptr.2d 386, 391 (2000) (citing *Allstate Ins. Co. v. Madan*, 889 F.Supp. 374, 380 (C.D.Cal.1995) and *Austero v. National Cas. Co.*, 84 Cal.App.3d 1, 35, 148 Cal.Rptr. 653, 675 (1978), disapproved of on other grounds by *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 824 n. 7, 169 Cal.Rptr. 691, 699 n. 7, 620 P.2d 141, 149 n. 7 (1979)). *Fraley*, which affirmed a summary judgment order in the insurer's favor, involved a dispute over the cost to repair the insured's home that was extensively damaged by fire. Contractors for both parties could not agree on the cost of repairs. *Fraley* held: "Where the parties rely on expert opinions, even a substantial disparity in estimates for the scope and cost of repairs does not, by itself, suggest the insurer acted in bad faith." *Fraley*, 81 Cal.App.4th at 1292, 97 Cal.Rptr.2d at 392. Furthermore, "an insurer 'may give its own interests consideration equal to that it gives the interests of its insured[s].'" *Id.* (quoting *Love*, 221 Cal.App.3d at 1148–49, 271 Cal.Rptr. at 252–53).

The Ninth Circuit has affirmed the dismissal of bad faith claims in numerous cases over the past 17 years because of genuine issues about liability under California law. In some of these cases, we found a genuine dispute as to coverage, despite the insurer's failure to investigate the claim, because of a dispute over the policy language. *See American Casualty Co. v. Krieger*, 181 F.3d 1113, 1123 (9th Cir.1999) (applying California law and finding a genuine dispute whether "sport or athletic contest/event" language includ-

ed bungee jumping); *Brinderson–Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 282–83 (9th Cir.1992) (finding no duty to investigate under California law if there is a genuine dispute over policy language); *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir.1988) (applying California law and finding a genuine dispute about the meaning of "medical treatment" in pre-existing condition clause of policy); *Hanson v. Prudential Ins. Co.*, 783 F.2d 762, 766 (9th Cir.1985) (finding a genuine dispute as to whether preadolescent residential treatment facility constituted a "hospital" under the policy as construed pursuant to California law). In other cases, we found a genuine issue as to coverage even when the district court failed to state a reason for denying the bad faith claim. *See Lunsford*, 18 F.3d at 656 ("Because [the insurer] investigated the insureds' claim and based its refusal to defend on that information and a reasonable construction of the policy, [the insurer] did not act in bad faith...." ); *Safeco Ins. Co. of America v. Guyton*, 692 F.2d 551, 557 (9th Cir.1982) (finding a genuine dispute over California insurance law about third-party negligence).

No Ninth Circuit case, however, has limited the genuine issue as to coverage rule to legal disputes. *Lunsford* indicates just the opposite, finding a lack of bad faith based on "information" from the insurer's investigation and the insurer's construction of the policy. *See Lunsford*, 18 F.3d at 656. Nor does finding the insurer liable under the policy mean that bad faith claims automatically proceed to the jury. *See Franceschi*, 852 F.2d at 1220 ("a court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, *even if the court concludes the claim is payable under the policy terms,* so long as there existed a genuine issue as to the insurer's liability.") (citation omitted) (emphasis added).

Lower federal courts have applied the rule to quintessentially factual disputes, or

where information revealed by the insurer's independent experts is inconsistent with an insured's claims. *See Phelps v. Provident Life & Accident Ins. Co.*, 60 F.Supp.2d 1014, 1021 (C.D.Cal.1999) (applying California law and finding that a genuine dispute existed about disability insurance liability based on surveillance films and examinations by three independent physicians). *Phelps* concluded: "while Plaintiffs dispute the results of the examinations, it is clear that a genuine issue regarding Defendant's continuing liability under the terms and conditions of the insuring agreement existed based on Defendant's investigation and reports." *Id.* at 1022–23. *See also Allstate Ins. Co. v. Madan*, 889 F.Supp. 374, 381 (C.D.Cal. 1995) (finding a genuine dispute as to coverage based on the testimony of three independent experts). In *Madan*, Allstate's investigator and three independent fire experts concluded that a wildfire did not cause the blaze that destroyed the Madans' home. Furthermore, Allstate had evidence that the Madans were experiencing financial hardship. Thus, the court found that "Allstate discovered evidence sufficient to find a genuine issue of liability under the policy." *Id.* at 380.

Other lower federal courts, however, have characterized the rule as being limited to disputes over policy language. *See, e.g., Dym v. Provident Life & Accident Ins. Co.*, 19 F.Supp.2d 1147, 1151 (S.D.Cal. 1998) (finding a genuine dispute because "this error was not based on a mistake regarding the facts surrounding plaintiff's disability fact but rather a mistake as to how the disability provision should be interpreted"); *Aronson v. State Farm Ins. Co.*, 2000 WL 667285, No. CV–99–4074 CAS BQRX, at *12 (C.D.Cal. May 11, 2000) (finding that "[t]he 'genuine issue' standard, or a similar standard, has been applied with particular force where, as here, the insurance claim presented either a complex or unresolved issue of law in the jurisdiction") (citations omitted). No district court in this circuit, however, has refused to apply the rule solely because the insurance company's decision was based on information from independent experts or because the dispute was purely factual.

■ Given the current state of California insurance law, the state appeals court's recent decision in *Fraley*, and the decisions of this court and other federal courts, we decline to limit the genuine dispute doctrine to purely legal or contractual disputes. Rather than establish a bright-line rule, we hold that the genuine dispute doctrine should be applied on a case-by-case basis. In some cases, the application of the rule to purely factual disputes will be inappropriate. In others, investigations by a defendant's independent experts will permit the invocation of the doctrine and summary judgment for the defendant on a bad faith claim.

■ In this case, Allstate's experts questioned the validity of Guebara's contents list from the outset. Guebara initially submitted an $18,000 contents list. The list contradicted Guebara's initial interview with Allstate's claims adjuster. Three independent investigators subsequently searched every room in the house and found only 20 percent of the items on the list. Although some of the items were eventually accounted for, even treating the evidence most favorably to Guebara, none of the big-ticket items such as the stereo, the television, the Polaroid and 35 millimeter cameras, or the camping equipment was ever found.

From Guebara and her family, Allstate received inconsistent explanations about the missing contents. Guebara's daughter, Sharon Dixon, initially informed Allstate that she had rummaged through the debris, but she did not mention that anything had been removed. Guebara testified during her EUO that the missing contents were lost in the heat of the fire. A month later, Dixon claimed to have removed some of the nonsalvageable items from the scene in order to show her children. Dixon later claimed she had removed the items in order to show Guebara. Yet both Dixon's

children and Guebara were at the scene when Dixon allegedly removed the items, which were never recovered.

Johnson's final report issued April 21, 1996, found no evidence that anyone had rummaged through the scene. Aleksick and Mara of the Niland Fire Department corroborated Johnson's report. In addition to the three expert opinions and Guebara's inconsistent explanations, Allstate learned of Guebara's extreme financial hardship. Her house was recently appraised at $35,000, declining in value from $75,000, and it needed substantial electrical and structural repairs. Guebara had put the house up for sale, and she had taken out a $28,000 loan on the house.

Allstate had legitimate bases for disputing Guebara's contents claim. This was not a case where Allstate was simply unwilling to pay off the policy. It paid the co-owners of the house $17,500 based on half the value of the structure. This case is directly in line with *Phelps, Madan,* and *Fraley.* In all of these cases, the insurance companies disputed insurance claims based on the opinions of independent experts. As in *Phelps* and *Fraley,* in this case Allstate relied on three expert opinions and other suspicious factors, including Guebara's inconsistent explanations, to deny insurance benefits. Thus, we find that Allstate's refusal to pay Guebara's claim was reasonable.

Guebara's real problem with Allstate's investigation is not that it was biased but that it took too long. Bad faith, according to the dissent, was based on the insurer's unreasonable delay. Part of the delay can be blamed on Guebara's witnesses. On September 8, 1995, Allstate took the statements of Guebara's daughter, Sharon Dixon, and Dixon's friend, Suska Brandon. Yet they did not return their signed transcripts until April 3, 1996. In April 1996, based on these transcripts, Johnson issued his final report. In June 1996, Guebara presented Allstate with additional witnesses who had seen the items in the house before the fire. Allstate interviewed

the witnesses and denied the claim in September.

Allstate probably should have denied Guebara's claim in May instead of interviewing more witnesses at Guebara's request in June. Allstate also probably should have denied Guebara's claim in July or August before Guebara filed her lawsuit in September. At best, by not denying Guebara's claim during the summer of 1996 instead of in September, Allstate was merely negligent. And under California law, negligence is not bad faith. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1166 (9th Cir.1995) (citing *National Life & Accident Ins. Co. v. Edwards,* 119 Cal. App.3d 326, 339, 174 Cal.Rptr. 31, 39 (1981)) ("mere negligence is not enough to constitute unreasonable behavior for the purpose of establishing a breach of the implied covenant of good faith and fair dealing in an insurance case").

If anything, Allstate is guilty of investigating too much. But if Allstate had terminated its investigation immediately after interviewing Dixon and Brandon in October, it could have exposed itself to bad faith liability for not investigating enough. Under California law, "an insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim." *Egan,* 24 Cal.3d at 817, 169 Cal.Rptr. 691, 694, 620 P.2d 141, 144. "The insurer in *Egan* denied the claim without a thorough investigation and without any good faith reason to believe that it was not liable for the claim." *Brinderson–Newberg,* 971 F.2d at 282. This case involves an independent investigation by three experts and a valid reason for denying the claim. In many genuine dispute cases based on the interpretation of policy language or on the current state of California insurance law, the insurers use the genuine dispute as a valid reason to terminate the investigation immediately. *See id.* at 283. In this case, Guebara merely asserts that Allstate's prolonged investigation was biased and unrea-

sonably long. The evidence does not support these allegations.

This case demonstrates why the dissent's suggestion that we limit the genuine dispute doctrine to purely legal issues is unworkable. The genuine dispute in this case was not purely factual. The genuine dispute as to the contents claims was based on factual evidence—three expert opinions, inconsistent testimony by Guebara and her witnesses, and desperate financial circumstances. The genuine dispute as to the structure claim, however, was based on the fraud language in the policy and on an unsettled issue in California insurance law. Thus, the dissent's bright-line rule fails to account for cases such as this one where the genuine disputes are both legal and factual. If any bright-line rules are to be drawn about the genuine dispute doctrine, we leave that task for the California Supreme Court.

■ Our decision does not eliminate bad faith claims based on an insurer's allegedly biased investigation. Expert testimony does not automatically insulate insurers from bad faith claims based on biased investigations. Although this list is not exhaustive, we can think of several circumstances where biased investigation claims could go to a jury: (1) the insurer is guilty of misrepresenting the nature of the investigatory proceedings, *see* *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1281, 31 Cal.Rptr.2d 433, 439 (1994) (allowing a bad faith claim to go to the jury where an insurance company without any evidence of fraud forced an insured to submit to an examination under oath, dissuaded the insured from having an attorney present, and misled the insured about the purpose of the examination); (2) the insurer's employees lie during the depositions or to the insured; (3) the insurer dishonestly selected its experts; (4) the insurer's experts were unreasonable; and (5) the insurer failed to conduct a thorough investigation.

Thus, we hold that the district court did not err in granting summary judgment on

Guebara's bad faith claims based on the genuine dispute doctrine. The genuine dispute doctrine is not limited to purely legal disputes; it should be applied on a case-by-case basis. In this case, the insurer's three independent experts and the insured's inconsistent explanations justified the invocation of the genuine dispute rule.

## IV. EXCLUSION OF ARSON DEFENSE

On cross-appeal, Allstate argues that the district court abused its discretion in granting Guebara's pre-trial motion to exclude evidence of arson. We affirm the district court's decision because Allstate repeatedly denied to Guebara that it was conducting an arson investigation. In a April 3, 1996, letter to Guebara, Allstate wrote:

> I have informed you repeatedly that Allstate is not conducting an arson investigation in this matter.... As no investigating agency, to my knowledge, has confirmed that this is an arson fire, it is difficult to understand how Allstate could be conducting such an investigation. I must note that, if some fire investigator determined that this matter was an arson fire, Guebara had the opportunity to start the arson fire, had the motive to do so, and could have benefitted therefrom. While that may be intellectually interesting, it has no bearing on this matter unless and until some investigative agent would determine officially that the fire was an arson fire.

Allstate assured Guebara that arson would have "no bearing" on its coverage analysis. None of Allstate's experts officially concluded that this was an arson fire. Its claim denial letter also did not mention arson.

■ Under California law, "[t]he waiver must be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right." *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 31, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995) (citations omitted).

Based on the April 3 letter, the district court did not err in finding an express waiver and precluding arson evidence at trial. It does not matter whether arson is an affirmative defense or just evidence to rebut Guebara's claim. Nor does it matter that arson was not mentioned in the claim denial letter. *See id.* at 32, 44 Cal.Rptr.2d 370, 387, 900 P.2d 619, 636 (finding that waiver does not occur automatically because of a failure to include a defense in the denial letter). What matters is that, based on Allstate's April 3 letter, Guebara relied on Allstate's assertions that it was not investigating arson, and therefore she did not hire a fire investigator of her own. Thus, we affirm the district court's exclusion of the arson evidence.

## V. JURY INSTRUCTION ON ACTUAL CASH VALUE

■ Finally, Allstate argues that the district court failed to instruct the jury to award only the "actual cash value" of all personal property lost in the fire. Guebara's insurance policy limited her contents claim to actual cash value (depreciated value), not the replacement value. The district court granted Allstate's pre-trial motion to exclude all evidence of the replacement costs of Guebara's personal property.

Allstate argues that the district court's instruction on California Insurance Code § 553 [3] contravened its pre-trial ruling and improperly allowed the jury to award replacement costs. Although the district court's instruction was not a model of clarity, it instructed the jury to award actual cash value: "the Plaintiff is entitled to recover the actual cash value on these items in her contents claim, unless—excuse me—she's only entitled to recover the actual cash value of these items—the ones

that you find were in the house at the time of the fire."

The district court's references to Insurance Code Section 553, which deals with waiver of proof of loss, did not instruct the jury to award replacement costs. Nor did the jury award replacement costs. It simply found Guebara's contents list a more credible estimate of the actual cash value than the estimate provided by Allstate two years after the fire. Guebara's contents list distinguished between actual cash value and replacement costs. Therefore, we affirm the district court's instruction as to actual cash value.

AFFIRMED.

BETTY B. FLETCHER, Circuit Judge, dissenting in part:

I respectfully dissent from that portion of the majority's opinion that upholds the district court's grant of summary judgment to Allstate on Guebara's bad faith claims. The critical issue is whether the "genuine issue as to coverage" rule ("genuine issue" rule) applies to factual disputes concerning coverage under an insurance policy or if the rule is limited to coverage disputes over the meaning of the policy. I conclude that the California Supreme Court would limit the rule to questions of law. Thus, I would reverse the district court's grant of summary judgment to Allstate on Guebara's bad faith claims and remand them for trial. Alternatively, I would certify whether the "genuine issue" rule applies to factual disputes concerning coverage under California law to the California Supreme Court.

What is at stake is not whether Guebara ultimately should prevail on her bad faith claims, but rather whether she has raised genuine issues that should be decided by the jury.[1] Under the rule the majority

---

3. Section 553 says: "All defects in a notice of loss, or in preliminary proof thereof, which the insured might remedy, and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived."

1. I note at the outset that the "genuine issue" rule is not well-named. Courts usually speak

of "genuine issues" in the context of summary judgment: If a party raises a genuine issue of material fact, summary judgment is inappropriate. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). The "genuine issue" rule mandates the opposite result: If an insurer can demonstrate a "genuine issue" as to its liability, a district court

would adopt as California law, whenever a factual dispute is advanced, whether real or debatable or even "manufactured" by the insurer, the insured is foreclosed from presenting to a jury her bad faith claim.

The facts in this case are admittedly messy, but all the more reason to let the jury decide. The record here contains evidence, when viewed in the light most favorable to Guebara, that is sufficient to withstand summary judgment. Allstate did almost nothing to investigate Guebara's claim after August of 1995; Allstate did not deny Guebara's claim until she filed suit, sixteen months after the fire; and Allstate paid Guebara's sister for her share of the structure claim, despite refusing to pay Guebara and asserting that Guebara's fraud voided the *entire* policy. Allstate had a duty to investigate fully Guebara's claim in a timely manner, even if it believed that she had made a fraudulent claim. At a minimum, the evidence in the record at least presents a genuine question as to whether Allstate fulfilled its duty.[2] *Cf. Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1282, 31 Cal. Rptr.2d 433, 441 (1994) ("Of course [the insurer] denies its investigation or claims handling were in bad faith, and posits innocent explanations for each of the indicia of bad faith cited by [the insured]. While these charges and counter-charges demonstrate that the evidence can be viewed differently, they also demonstrate that the issue was one for the jury to decide, and that either determination would find adequate evidentiary support.") (upholding

jury finding of bad faith as supported by substantial evidence).

Under California law, every contract contains an implied covenant of good faith and fair dealing that requires each party to the contract to act in a manner not to injure the rights of the other to receive the benefits of the agreement. *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, ——, 97 Cal.Rptr.2d 151, 158, 2 P.3d 1, 8 (2000). Since insurance policies are contracts, they contain the implied covenant. *Id.* Central to the inquiry for determining whether an insurer has violated the implied covenant is whether the insurer has processed an insured's claim under a policy in a reasonable manner. *See, e.g., Gourley v. State Farm Mut. Auto. Ins. Co.*, 53 Cal.3d 121, 127, 3 Cal.Rptr.2d 666, 669, 822 P.2d 374, 378 (1991) (in bank) ("The substance of a bad faith action in these first party matters is the insurer's unreasonable refusal to pay benefits under the policy."); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 574, 108 Cal.Rptr. 480, 485, 510 P.2d 1032, 1038 (1973) (in bank) (holding that "when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability" for violation of the implied covenant of good faith and fair dealing).

On an insurer's motion for summary judgment seeking denial of an insured's bad faith claim, the district court applying California law views the evidence in the light most favorable to the insured. If there are any genuine issues concerning the reasonableness of the insurer's deal-

"can conclude as a matter of law that an insurer's denial of a claim is not unreasonable" and can grant summary judgment to the insurer. *Am. Cas. Co. v. Krieger*, 181 F.3d 1113, 1123 (9th Cir.1999) (quoting *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir.1994)). (internal quotation marks omitted). The name of the "genuine issue" rule thus invites confusion with the standard for granting summary judgment.

**2.** The majority asserts that part of Allstate's delay can be blamed on Guebara's witnesses who gave statements to Allstate in 1996. Even assuming that this is so, the evidence in

the record is still sufficient to raise a genuine issue as to whether Allstate's handling of Guebara's claim was unreasonable. *See McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1038, 1045, 200 Cal.Rptr. 732, 736, 741 (1984) (denying insurer's motion for summary judgment on insured's bad faith claim where some of the delay in processing insured's claim could be attributed to insurer, even if some of the delay could also be attributed to insured). It is also worth noting that Allstate took Guebara's witness statements in 1996 only because Guebara's attorney demanded that it do so.

ings with the insured, summary judgment for the insurer is improper. *See, e.g., Ward v. Allstate Ins. Co.,* 964 F.Supp. 307, 312–13 (C.D.Cal.1997); *Bornstein v. J.C. Penney Life Ins. Co.,* 946 F.Supp. 814, 821 (C.D.Cal.1996). *Cf. McCormick v. Sentinel Life Ins. Co.,* 153 Cal.App.3d 1030, 1037–50, 200 Cal.Rptr. 732, 735–45 (1984).

I agree that under the "genuine issue" rule, a district court "can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability." *Am. Cas. Co. v. Krieger,* 181 F.3d 1113, 1123 (9th Cir.1999) (quoting *Lunsford v. Am. Guar. & Liab. Ins. Co.,* 18 F.3d 653, 656 (9th Cir.1994)) (internal quotation marks omitted). We have always understood that to mean uncertainty as to applicable law. In all of the prior cases in which we· have applied the rule, we found the existence of a "genuine issue" only when there was a question concerning an insurer's liability under California law. *See, e.g., id.; Lunsford,* 18 F.3d at 656; *Brinderson–Newberg Joint Venture v. Pac. Erectors, Inc.,* 971 F.2d 272, 283 (9th Cir.1992); *Franceschi v. Am. Motorists Ins. Co.,* 852 F.2d 1217, 1220 (9th Cir. 1988); *Hanson v. Prudential Ins. Co.,* 783 F.2d 762, 766 (9th Cir.1985); *Safeco Ins. Co. v. Guyton,* 692 F.2d 551, 557 (9th Cir.1982). Similarly, California courts adopting and applying the "genuine issue" rule have applied it to coverage disputes arising from questions of law, *see, e.g.,*

*Filippo Indus., Inc. v. Sun Ins. Co.,* 74 Cal.App.4th 1429, 1438, 88 Cal.Rptr.2d 881, 887 (1999); *Tomaselli,* 25 Cal.App.4th at 1282, 31 Cal.Rptr.2d at 440–441; *Opsal v. United Servs. Auto. Assoc.,* 2 Cal.App.4th 1197, 1205, 10 Cal.Rptr.2d 352, 357 (1992).[3]

Here, the district court granted Allstate's motion for summary judgment denying Guebara's bad faith claim because it found "a 'genuine issue' as ·to whether Plaintiff made misrepresentations as to her contents claim." *Guebara v. Allstate Ins. Co.,* No. 96–1683–B (LSP), at 8 (S.D. Cal. June 4, 1997) (Order Granting in Part and Denying in Part Defendant Allstate's Motion for Summary Judgment). Thus the district court's grant of summary judgment was not premised on a dispute concerning a question of law, but rather on a factual dispute. The California Supreme Court has not addressed whether the "genuine issue" rule applies to cases in which the coverage dispute concerns a question of fact.[4] Our task, therefore, is to predict how that court would decide this issue .or send it to the California Supreme Court to make the determination.

Although the majority recognizes that the proper focus of our inquiry is predicting how the California Supreme Court would rule on this matter, it relies on a single opinion from one of the California Courts of Appeal. The majority is correct that while we have applied the rule to coverage disputes that turn on questions of

---

**3.** The majority relies on the one exception, a court of appeals decision, *Fraley v. Allstate Ins. Co.,* 81 Cal.App.4th 1282, 97 Cal.Rptr.2d 386 (2000).

**4.** Indeed, the California Supreme Court has not even considered whether the "genuine issue as to coverage" rule is an accurate statement of California law. The rule is of uncertain provenance. We announced the "genuine issue" rule in *Safeco Ins. Co. v. Guyton,* 692 F.2d 551, 557 (9th Cir.1982), without citing any California authority for the proposition that a genuine coverage dispute may be used as a proxy for reasonableness. There is some question as to whether the California Supreme Court would endorse the rule, even when restricted to coverage disputes arising

out of questions of law. In at least one case, the California Supreme Court has held that an insurer's failure to pay a claim where an ambiguity in the insurance policy created a coverage dispute was a violation of the covenant of good faith and fair dealing. *See Silberg v. Cal. Life Ins. Co.,* 11 Cal.3d 452, 460–64, 113 Cal.Rptr. 711, 716–19, 521 P.2d 1103, 1109–12 (1974) (in bank) (construing ambiguous policy language strictly against the insurer, court held that insurer must pay claim since it could obtain reimbursement if coverage was ultimately disproved). Nonetheless, as applied to coverage disputes arising from question of laws, the rule is clearly established in our circuit and is binding on this panel.

California law, we have not explicitly held that the rule is limited to legal disputes. But we have never applied it to factual disputes. The majority relies on some lower federal court opinions that have applied the rule to fact-based coverage disputes. These cases are of limited use. Our inquiry must be what the California Supreme Court would hold.

In general, California law is very protective of the rights of the insured. Insurers are limited to contract remedies if the insured breaches the implied covenant of good faith and fair dealing, while the insured can recover in tort. *Kransco*, 23 Cal4th at ——, 97 Cal.Rptr.2d 151, 158, 2 P.3d at 8. Allowing the insured access to the greater damage awards available in tort "advances the social policy of safeguarding an insured in an inferior bargaining position who contracts for calamity protection, not commercial advantage." *Id.* Because the policies underlying an insurer's duty of good faith and fair dealing are different from those underlying the insured's correlative duty, the scope of the insurer's duty and the remedies available to the insured for a breach of that duty are "fundamentally and conceptually distinct" from those of the insurer. *Id.* at 9, 97 Cal.Rptr.2d at 158. Thus even the insured's breach of the insurance contract does not excuse the insurer's duty of good faith and fair dealing. *Id.* ("[T]he insurer's duty is unconditional and *independent* of the performance of [the insured's] contractual obligations." (quoting *Gruenberg*, 108 Cal.Rptr. 480, 510 P.2d at 1040) (emphasis and second alteration in original)).

The insurer's duty is defined by reference to the terms and conditions of the insurance policy. *Id.* at 8, 97 Cal.Rptr.2d 151. What insureds seek is protection against risk. In the usual case, "the benefit contracted for by the insured is the availability of money promptly upon the happening of the event insured against, and when an insurer refuses unreasonably to make a payment of the benefits due under the terms of the policy, it deprives the insured of the essential benefit of the agreement." *Austero v. Nat'l Cas. Co.*, 84 Cal.App.3d 1, 29, 148 Cal.Rptr. 653, 672 (1978), *overruled on other grounds by Egan v. Mut. of Omaha Ins. Co.*, 24 Cal.3d 809, 823 n. 7, 169 Cal.Rptr. 691, 698 n. 7, 620 P.2d 141, 149 n. 7 (1979) (in bank). When an insured makes a claim, the insurer has an affirmative duty to investigate objectively, "inquir[ing] into possible bases that might support the insured's claim.... [A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan*, 169 Cal.Rptr. 691, 694, 620 P.2d at 145–46. Thus if an insurer fails to properly investigate its insured's claim, it is subject to liability for breach of the implied covenant of good faith and fair dealing. *Id.* This is true even if the insurer suspects that the insured's claim is fraudulent. *Id.* In addition, an undue delay in processing a claim can be a sufficient basis for a bad faith claim. *See McCormick*, 200 Cal.Rptr. at 744.

Under the "genuine issue" rule as it should be applied, Guebara's claims withstand summary judgment: Guebara's contents claim does not involve a dispute turning on a question of law.[5] It is only by extending the "genuine issue" rule to include factual coverage disputes that the majority is able to conclude that Allstate's investigation was reasonable as a matter of law. We should think seriously about the consequences that will follow from the majority opinion. So long as an insurer can point to disputed facts concerning cover-

---

**5.** Allstate does raise a genuine legal issue as to whether a fraudulent contents claim voids the entire contract, and thus whether Guebara's alleged fraud voids her structure claim. However, this legal dispute as to coverage is derivative of the factual dispute. If factual disputes do not constitute "genuine issues," then there is no cognizable legal dispute as to coverage in this case. The majority therefore begs the question when it states that "the dissent's bright-line rule fails to account for cases such as this one where the genuine disputes are both legal and factual."

age, value, cause, or a myriad of other factual disputes, it can obtain summary judgment on an insured's bad faith claim-even if the insured has raised genuine issues of material fact concerning the reasonableness of the insurer's conduct in processing the claim.

It is essential to keep in mind what this case is and is not about. The case is about whether the existence of a fact-based dispute, real or debatable, is sufficient to support the conclusion that an insurer's conduct in processing an insured's claim is reasonable as a matter of law. The record contains evidence that raises genuine issues of material fact concerning the reasonableness of Allstate's treatment of Guebara's claim. She is entitled to have a jury decide these issues. I would reverse and remand for trial on Guebara's bad faith claims.