TALLMAN, Circuit Judge,
dissenting:
I thought we were interpreting a statute based on the elements of the cause of action it creates. But Judge Smith, writing for a divided court, insists that we must determine whether Congress enacted the Telephone Consumer Protection Act (the “TCPA”) only to prevent invasions of privacy, or whether it also meant to address other concerns. Maj. Op. at 801-02. I respectfully disagree. When Congress defines a cause of action based on specific and unambiguous statutory elements, what matters is what the statute says — not what motivated enactment of the statute.
Because nothing within the words Congress chose suggests that a TCPA plaintiff must prove invasion of privacy, a TCPA claim is not automatically a privacy claim. And because Emanuel expressly disavowed his privacy claims and instead sought recovery under the TCPA, his claims were not common law privacy claims. They were statutory TCPA claims.
I conclude that Emanuel’s claims did not fall under the privacy exclusion of the insurance policy, that Federal Insurance Co. (“Federal”) had a duty to defend the Los Angeles Lakers, Inc. (the “Lakers”), and that the district court erred when it dismissed the Lakers’ claims.
I
Judge Smith .asserts that Congress enacted the TCPA “to protect privacy rights and privacy rights alone,” and concludes that a TCPA claim is thus automatically a privacy claim. Maj. Op. at 803-04. In doing so, he refuses to define a TCPA claim by its unambiguous statutory elements, and instead redefines and limits a TCPA claim based on the Act’s underlying purpose. This is error.
A
As explained repeatedly by the Supreme Court, “it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.” Cooper Indus. v. Aviall Servs., 543 U.S. 157, 167-68, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004) (alteration omitted) (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). When a statute is unambiguous, it is “unnecessary for [us] to look to [its] purpose to aid interpretation.” McDonald v. Sun Oil Co., 548 F.3d 774, 781 n.5 (9th Cir. 2008) (citing Cooper Indus., 543 U.S. at 157, 125 S.Ct. 577), abrogated on other grounds by CTS Corp. v. Waldburger, — U.S. —, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014). For this reason, we *808 need not examine the underlying purpose of the TCPA unless we first make a threshold determination that the statute is ambiguous. See BedRoc Ltd. v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (“[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.”).
This case involves two provisions of the TCPA. First, 47 U.S.C. § 227(b)(1), in relevant part, makes it unlawful:
[F]or any person within the United States ... to make any call ... using any automatic telephone dialing system [an “ATDS”] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... for which the called party is charged for the call.
Second, § 227(b)(3) creates a statutory right to recover for the violation, allowing:
A person or entity ... [to] bring ... an action based on a violation of [the TCPA] or the regulations prescribed under this subsection to ... recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.
There is no ambiguity here. These provisions create a cause of action and define the damages recoverable from a statutory violation when a plaintiff can prove: “(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient’s prior express consent.” Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). Our interpretation of the TCPA should therefore “begin[] with the statutory text, and end[ ] there as well.” BedRoc, 541 U.S. at 183, 124 S.Ct. 1587. There is no need to determine whether Congress only enacted the TCPA to prevent invasions of privacy, or whether it also enacted the TCPA to address other concerns.[1]
And yet, without first finding ambiguity, Judge Smith proceeds to examine the underlying purpose of the TCPA, He asserts that Congress only enacted the TCPA to prevent invasions of privacy, and relies on this asserted purpose to conclude that a plaintiff automatically “pleads an invasion of privacy claim” by “pleading the elements of a TCPA claim.” Maj. Op. at 804. In so reasoning, he redefines a TCPA claim. But that can’t be right. A TCPA claim is already defined by its unambiguous statutory elements — and none of those elements say anything about “privacy.”[2]
*809 Even if it were true that Congress only enacted the TCPA to prevent invasions of privacy, see infra Part I.B, “statutory prohibitions often go beyond the principal evil” that they were enacted to remedy. Oncale, 523 U.S. at 79, 118 S.Ct. 998. For example, although the Racketeer Influenced and Corrupt Organizations Act (“RICO”) was enacted “to seek the eradication of organized crime in the United States,” Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 524, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (Powell, J., dissenting) (citation omitted), a RICO claim is not limited by this underlying purpose. Instead, a RICO claim is defined by its statutory elements. So long as a RICO plaintiff can prove “(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity,” id. at 496, 105 S.Ct. 3275, he does not need to prove that the defendant was involved in organized crime, see id. at 525, 105 S.Ct. 3275 (Powell, J., dissenting) (noting that a RICO claim may involve only “garden-variety fraud and breach of contract”). In the same way, so long as a TCPA plaintiff can prove (1) a call (2) using an ATDS (3) without prior express consent, Meyer, 707 F.3d at 1043, he does not need to prove that the defendant invaded his privacy.
In sum, Judge Smith errs by redefining a TCPA claim as a privacy claim and then invoking the contractual exclusion to deny insurance coverage. We should instead faithfully adhere to the words of the Act, which defines a TCPA claim by unambiguous statutory elements saying nothing about privacy.
B
Moreover, although there is no need to examine the underlying purpose of the TCPA, it is simply not true that Congress only enacted the TCPA to prevent invasions of privacy. The TCPA specifically addresses public safety concerns, provides redress for economic injury, and protects businesses from ATDS calls.
First, regarding public safety, § 227(b)(1)(A)© specifically prohibits the use of an ATDS to call an emergency telephone line. Congress did not include this provision to protect law enforcement personnel and health care providers from invasions of privacy. Instead, Congress included this provision to protect the public, recognizing that the use of an ATDS poses “a risk to public safety” if “an emergency or medical assistance telephone line is seized.” H.R. Rep. No. 102-317, at 2 (1991). Imagine calling 911 for help and getting a busy signal.
Second, the TCPA provides redress for economic injury. Section 227(b)(3) allows a plaintiff to recover “actual monetary loss” when that loss is higher than the fixed statutory award of $500 per negligent violation and $1,500 per intentional violation. If Congress only enacted the TCPA to protect against invasions of privacy, the fixed statutory award would be sufficient. See Universal Underwriters Ins. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 881 (8th Cir. 2005) (explaining that the statutory award accounts for “hard-to-quantify” damages). But because the TCPA specifically allows recovery for “actual monetary loss,” it is clear that Congress was also concerned about the economic injury caused by ATDS calls. See Soppet v. Enhanced Recovery Co., 679 F.3d 637, 638 (7th Cir. 2012) (recognizing that “an automated call to a cell phone adds expense to annoyance”); see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (noting that ATDS calls “can be costly”).
Judge Smith asserts that “actual monetary loss” is only available because the *810 plaintiff suffered an invasion of privacy. Maj. Op. at 804-05, Not so. The TCPA creates a legal right and elevates a “previously inadequate” injury — the receipt of an ATDS call without prior express consent — to a “legally cognizable injur[y].” Lujan v. Defs. of Wildlife, 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Significantly, a plaintiff may be able -to prove violation of the TCPA — that he received an ATDS call without prior express consent — even if he is unable to prove invasion of privacy by showing that he had “a reasonable expectation of privacy” and the alleged conduct was “highly offensive to a reasonable person.” Taus v. Loftus, 40 Cal.4th 683, 54 Cal.Rptr.3d 775, 151 P.3d 1185, 1212 (2007) (citation omitted).[3] The TCPA provides redress for economic injury regardless of whether a plaintiff suffered an invasion of privacy because Congress chose not to include a privacy element.
Third and finally, Congress enacted the TCPA to protect businesses from ATDS calls. The TCPA specifically allows any “person or entity” that receives a call, text, or fax in violation of the TCPA to bring a claim for damages or injunctive relief. 47 U.S.C. § 227(b)(3) (emphasis added). Congress used this language because it recognized that businesses may be harmed by ATDS calls. And because “[m]ost states hold that business entities lack privacy interests,” Am. States Ins. v. Capital Assocs. of Jackson Cty., Inc., 392 F.3d 939, 942 (7th Cir. 2004) (citation omitted),[4] it is not surprising that Corigress cited harms unrelated to invasion of privacy. For example, Congress recognized that ATDS calls tie “up all the lines of a business and prevent[ ] any outgoing calls” and generally pose “an impediment to interstate commerce.” S. Rep. No. 102-178, at 2 (1991).[5]
Although we do not need to examine the underlying purpose of.the TCPA, these examples demonstrate beyond cavil that Congress did not enact the TCPA only to prevent invasions of privacy. Not all TCPA claims are privacy claims,
II
The proper inquiry here is not whether a TCPA claim is automatically based on invasion of privacy, but whether the underlying claims in this particular case are based on invasion of privacy. Because I conclude that Emanuel’s claims are not privacy claims, I would reinstate the Lak-ers’ claims for breach of the insurance contract and for bad faith.
A
The Lakers argue that Federal had a duty to defend against the Emanuel action because the policy imposed a duty to defend against claims alleging “wrongful acts.” We interpret the “wrongful acts” *811 coverage clause “broadly so as to afford the greatest. possible protection” to the Lakers. MacKinnon v. Track Ins. Exch., 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205, 1213 (2003) (citation omitted). The Lakers argue that Emanuel alleged they committed a wrongful act by sending a text message in violation of the TCPA.
Federal, on the other hand, argues that it had no 'duty to defend the Lakers because the policy excluded claims “based upon, arising from, or in consequence of ... invasion of privacy.” We interpret this exclusionary clause narrowly against Federal, see id., but we give it due effect when a claim is in fact based on invasion , of privacy.[6] Federal primarily argues that Emanuel’s claims are based on invasion of privacy because all TCPA claims are based on invasion of privacy. Although Judge Smith would decide the case on this ground, I do not accept this theory. See supra Part I. Federal also argues that Emanuel’s claims are based on invasion of privacy because Emanuel alleged that the Lakers invaded his privacy. Although Judge Murphy would decide the case on this alternative ground, I do not accept that theory either.
It is true that Emanuel twice alleged that the Lakers invaded his privacy,[7] see Maj. Op. at 805 n.6, but he did not seek recovery on this basis. Instead, he sought recovery for an alleged violation of the TCPA, and expressly disavowed his privacy claims. I therefore conclude that Federal had a duty to defend the Lakers against the Emanuel action, and the district court erred by dismissing the Lakers’ claim for breach of. contract.
First, Emanuel did not seek recovery based on invasion of privacy. Cf. ACS Sys., Inc. v. St. Paul Fire & Marine Ins., 147 Cal.App.4th 137, 53 Cal.Rptr.3d 786, 794-95 (2007) (dismissing a complaint that included both a TCPA claim and a common law privacy claim). Although Emanuel alleged that the Lakers ’invaded his privacy, he did not seek recovery on the theory that the Lakers portrayed him in a false light in the public eye, disclosed “true, embarrassing private facts” about him, or appropriated his “name or likeness for commercial purposes.” Johnson v. Harcourt, Brace, Jovanovich, Inc., 43 Cal. App.3d 880, 118 Cal.Rptr. 370, 375 (1974) (describing types of privacy claims). Nor did he seek recovery on the theory that he had “a reasonable expectation of privacy” in his cellular telephone number and the Lakers’ confirmation text was “highly offensive to a reasonable person.” Taus, 54 Cal.Rptr.3d 775, 151 P.3d at 1212; cf. Maj. Op. at 806 (equating a TCPA claim with a claim for invasion of privacy by intrusion upon seclusion). Instead, Emanuel drafted an 11-page complaint that alleged facts mirroring the statutory elements . of a TCPA claim and sought recovery for violation of the Act.
Second, Emanuel expressly disavowed all claims based on invasion of privacy. His complaint specifically sought “only damages and injunctive relief for recovery of *812 economic injury,” including certain cellular telephone charges and reduced cellular time. First Am. Compl. ¶ 32, Emanuel v. L.A. Lakers, Inc., No. 2:12-cv-9936 GW (SHx) (C.D. Cal. Feb. 8, 2013), ECF No. 15. His complaint also stated that it was “expressly ... not intended to request any recovery for personal injury and claims related thereto.” Id. The parties agree that a claim for invasion of privacy is a personal injury claim. See Hon. H. Walter Croskey et al., California Practice Guide: Insurance Litigation § 7:128 (The Rutter Group 2015) (explaining that personal injury includes “certain enumerated ‘offenses,’ including ... invasion of privacy”). Thus, the complaint expressly disavowed claims based on common law invasion of privacy.
Because Emanuel only sought recovery based on an alleged violation of the TCPA, see Lujan, 504 U.S. at 578, 112 S.Ct. 2130, and expressly disavowed claims based on invasion of privacy, Federal had a duty to defend the Lakers against the Emanuel action.
B
After the district court dismissed the Lakers’ claim for breach of contract, it also dismissed the Lakers’ claim for breach of the implied covenant of good faith and fair dealing. See Manzarek v. St. Paul Fire & Marine Ins., 519 F.3d 1025, 1034 (9th Cir. 2008) (“[Wjithout a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing.” (quoting Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 638-39 (1995))). Because I conclude that Federal had a duty to defend the Lakers, I next consider whether the district court erred by dismissing the Lakers’ claim for bad faith.
To establish a claim for bad faith “a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause.” Guebara v. Allstate Ins., 237 F.3d 987, 992 (9th Cir. 2001) (citing Love v. Fire Ins. Exch., 221 Cal.App.3d 1136, 271 Cal.Rptr. 246, 255 (1990)).
The Lakers properly allege that Federal withheld benefits due under the policy. See supra Part II.A. The Lakers also allege that Federal withheld benefits without proper cause. Specifically, the Lakers allege that Federal refused to defend simply because Emanuel used the term “invasion of privacy” in his complaint.
It would be unreasonable for Federal to deny coverage based on a passing reference to the term “invasion of privacy.” An insurer may not rely on “the labels given to the causes of action” in a complaint, and must instead determine whether “the alleged facts or known extrinsic facts ... reveal a possibility that the claim may be covered by the policy.” Atl. Mut. Ins. v. J. Lamb, Inc., 100 Cal.App.4th 1017, 123 Cal.Rptr.2d 256, 268 (2002) (emphasis omitted). Therefore, because we must accept as true the Lakers’ allegation that Federal denied coverage based on a passing reference to the term “invasion of privacy,” see Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994), I would also reinstate the Lakers’ claim for bad faith.[8]
*813 h-i i — i i — t
When a cause of action is denned by specific and unambiguous statutory elements, there is no need to redefine or restrict that cause of action based on the underlying purpose that motivated its enactment. In its decision today, the court errs by rejecting the statutory elements chosen by Congress and redefining a TCPA claim as a narrowly restricted privacy claim. Because Emanuel sought recovery based on an alleged violation of the TCPA, and did not seek recovery based on invasion of privacy, I would reverse the district court’s order dismissing the Lak-ers’ claims.
I respectfully dissent.

. We have examined the underlying purpose of the TCPA on other occasions, but only after first identifying a textual ambiguity. For example, in Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009), we considered whether the Federal Communications Commission (the "FCC”) reasonably interpreted "call” as encompassing "both voice calls and text messages.” Id. at 949, Only after making the threshold determination that the TCPA was ambiguous because it did not define "call,” id. at 952, did we examine the underlying purpose of the TCPA, id. at 954.

. The TCPA does use the word "privacy" in other provisions, but only in the context of further rulemaking by the FCC. See 47 U.S.C, § 227(b)(2), (c)(l)-(2), (c)(3)(K); see also Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 373-74, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012) (explaining that the TCPA "principally outlaws four practices” but "also directs the FCC to prescribe regulations to protect the privacy of residential telephone subscribers”). If anything, the fact that Congress limited further rulemaking to practices invasive of privacy, but chose not to include that limitation in the statutory cause of action, proves that a TCPA claim is not inherently a privacy claim. Hardt v. Reliance Standard Life Ins., 560 U.S. 242, 252, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) ("The contrast between these two [provisions] makes clear that Congress knows how to impose express [privacy] limits....”).

. For example, in Drew v. Lexington Consumer Advocacy, LLC, No. 16-cv-00200-LB, 2016 WL 1559717 (N.D. Cal. Apr. 18, 2016), the court concluded that a plaintiff "adequately plead[ed]” a TCPA violation, id. at *5, but did not adequately plead "the harassment that constitutes an invasion of privacy,” id. at *8,

. California is one of these states. See Fibreboard Corp. v. Hartford Accident & Indem. Co., 16 Cal.App.4th 492, 20 Cal.Rptr.2d 376, 391 (1993).

. Other courts have allowed corporations to bring claims under the TCPA, which would be impermissible if all TCPA claims were limited to invasion of privacy. See, e.g., Imhoff Inv., L.L.C. v. Alfoccino, Inc., 792 F.3d 627, 631 (6th Cir. 2015) (allowing a corporation to bring suit alleging violation of the TCPA’s "junk fax” provision); Eclipse Mfg. Co. v. M & M Rental Ctr., Inc., 521 F.Supp.2d 739, 743-44 (N.D. Ill. 2007) ("[C]orporations bringing claims under the TCPA may only assert the property interests [that] the TCPA was designed to protect.”).

. This distinction between a coverage clause and an exclusionary clause distinguishes our case from other cases comparing a TCPA claim to a claim based on invasion of privacy. For example, in Universal Underwriters, the policy provided coverage for claims based on invasion of privacy. 401 F.3d at 882. The court read this coverage clause broadly and concluded that “unsolicited fax advertisements” qualified as " ‘invasions of privacy’ under ordinary, lay meanings of these phrases,” Id. at 881. Here, by contrast, the policy excludes claims based on invasion of privacy. The privacy clause should therefore be read narrowly against Federal.

. The complaint also discussed invasion of privacy when-it discussed the underlying purpose of the TCPA.

. However, if Federal demonstrates that it actually denied coverage because it concluded that all TCPA claims are privacy claims, the district court would likely be required to grant summary judgment on the Lakers bad faith claim. See Feldman v. Allstate Ins., 322 F.3d 660, 669 (9th Cir. 2003) (“Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was a ‘genuine dispute as to coverage.’ " (quoting Guebara, 237 F.3d at 992)). Given the fact that reasonable judicial minds are in dis *813 agreement as to the nature of a TCPA claim, Federal may well have had a valid, good faith basis for denial of coverage.